Cahill *vs.* Lee.

(Decided 21st January, 1881.)

---

PATRICK CAHILL *vs.* LELIA S. LEE and JOHN BOY-
KIN LEE, her husband.

*Right of Distress by a Landlady, an Agreement by her Husband to the Contrary—Construction of Stat. 2 W. & M., ch. 5—Appraisers, Notice of Distress and Sale—Questions for the Jury—Measure of Damages in an action for an alleged Illegal Distress.*

A tenant's property was distrained on by Mrs. L.; for rent in arrear due her. The tenant had previously agreed in writing to surrender his lease to Mrs. L's husband in his own right. He acted as her agent to collect her rents. There was no proof that Mrs. L. authorized or ratified the agreement or a suspension of her right of distress. In an action against Mrs. L. and her husband to recover damages for an alleged illegal distress, it was HELD :

That the tenant could not recover.

The phrase in Stat. 2 W. & M., ch. 5. of two " sworn appraisers," means that two indifferent persons shall be sworn to appraise the goods distrained according to the best of their understandings; they

must be persons who are reasonably competent, but they need not be professional appraisers. An auctioneer and the watchman left in charge of lumber distrained in a lumber yard may appraise it.

Notice of distress and sale posted up on the premises, the lot leased being used by the tenant as a lumber yard, and also advertised once in a daily newspaper, conforms to the requirements of Stat. 2 W. & M., ch. 5.

An action will lie against a landlord upon the equity of Stat. 2 W. & M., ch. 5, for improper management of property taken under a distress for rent, and an improper offering of it for sale, so that it did not sell for the " best price " within the meaning of the provi·sion of the statute, making it lawful for the landlord to sell. What will constitute such mismanagement as will make the distrainer liable, must depend upon the circumstances of each case, and the character of the property seized and sold.

· The jury should be allowed to consider, in an action for damages against a landlord for an alleged illegal distress, evidence produced as to whether lumber taken under the distress, was properly lotted and exhibited for sale, and whether in consequence of mismanagement in this respect, it sold for less than it otherwise would. In such a case, if the jury found for the plaintiff, the measure of damages would be the fair market value of the lumber at the time and in the condition it was, when seized, less the amount of rent discharged by the proceeds of the sales of it actually made.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial the plaintiff took four exceptions, which are substantially stated in the opinion. The evidence being all in, the plaintiff offered the following prayers :

1. That if the jury shall find from the evidence, that the plaintiff, P. Cahill, was in possession of a leasehold of land on Cathedral Street, which he used as a lumber yard, and carried on there the business of a lumber dealer, and that prior to 1874 he held said lease under a certain Thomas Symington, subject to an annual ground rent of

$514,67, payable in two sums, due respectively on the 10th April, and the 10th of October, on each of said days, a semi-annual payment of $257.33 ; and that on or about the 28th April, in the year 1874, he received a written notice from one of the defendants, J. Boykin Lee, announcing that he, the said J. Boykin Lee, had bought out the estate of said Symington, and that thereafter the aforementioned semi-annual rent would be payable to him, and that in said written note he referred to a deed conveying to him the interest of said Symington, as of record in the Land Records, which said deed was in fact not a deed to him, the said J. Boykin Lee, but to his wife, Lelia S. Lee, co-defendant in this action, and that the said Cahill thereafter, did accordingly pay to the said J. Boykin Lee, the said semi-annual rents as they fell due, up to the 10th October, 1878, and that said J. Boykin Lee, acting as agent for said wife, and duly authorized by her so to do, did collect the said rents and sign receipts for the same in his own name, then the jury are at liberty to infer that the said J. Boykin Lee was authorized to make upon a valuable consideration, an agreement binding upon her and upon him, for an extension of time for the payment of said rent, provided the same was a reasonable time, and that when the rent for the six months ending April 10th, 1879, fell due, the said J. Boykin Lee, took no proceedings to enforce the collection of said rent until April 22nd, 1879, and that having already extended the time for collecting said rent from April 10th to April 22nd, he was authorized to extend it eight days longer until the 1st May, and the jury shall further find, that on the 22nd April, the said J. Boykin Lee did make an agreement with the plaintiff, Cahill, to further extend the time for the collection of said rent over-due, until the 1st May, and that said extension was a reasonable time, and that in consideration of said extension, the said J. Boykin Lee procured the plaintiff to sign the paper offered

in evidence in the handwriting of said Lee, and signed P. Cahill, then the said agreement was valid, and operated as an extension of time, to pay said rent until the first day of May, and binding upon the said defendants, and if the jury shall further find, that the said Lelia S. Lee did, on the 30th April, in disregard of said agreement, distrain on the lumber yard of said Cahill, for the said rent due on April 10th, and sold out the property of said Cahill, and broke up his business and injured his credit, then the plaintiff is entitled to recover.

2. If the jury shall believe from the evidence of P. Cahill, the plaintiff, that for a valuable consideration moving to these defendants, the defendant, J. Boykin Lee, acting as agent for his wife, Mrs. Lelia S. Lee, agreed, on April 22nd, 1879, to delay proceedings for the collection of the arrearages of ground rent, which fell due on April 10, of that year, until May 1st, a period of eight days, and shall further find, that notwithstanding said agreement, the said Lelia S. Lee did distrain on 30th April, whereby the property of the plaintiff was sold, his business broken up, and his standing as a lumber merchant greatly prejudiced; then the plaintiff is entitled to recover in this action, and that the measure of damages must be twice the value of the goods thus sold, and compensatory damages for the injury to the plaintiff's business.

3. That if the jury shall find from the evidence that the lumber, goods and chattels, &c., seized and sold under the distraint proceedings, offered in evidence by the defendant, were sold in an improper manner, and not properly exhibited or described, so as to bring the best prices, and that by reason of said improper manner of sale and exhibition, they did not bring the best prices, then they must find for the plaintiff on the second count in the declaration, and that the measure of damages must be the fair value of said goods and chattels, and lumber distrained upon, less the amount of rent discharged by the produce of said sale.

4. That the notice served upon the plaintiff, of the distress offered in evidence, was not sufficient and that the plaintiff is entitled to recover, and that the measure of damages must be the fair value of said lumber, goods and chattels sold under said distraint proceedings, less the amount of rent discharged by the produce of said sale.

5. That the paper in the hand-writing of J. Boykin Lee, and signed by P. Cahill, bearing date April 22nd, 1879, taken in connection with the facts in evidence, was an equitable surrender of the leasehold estate of P. Cahill to the defendant, Lelia S. Lee, and operated as an acquittance to the said Cahill of the rent due on April 10th, 1879.

And the defendants offered three prayers; the second is stated in the opinion; the third need not be stated; the first is as follows:

That if the jury believe from the evidence that the defendant, Lelia S. Lee, was the owner of the ground rent issuing out of the lot in question on the 30th April, 1879, and that on that day six months rent for the period ending April 10, 1879, was unpaid, and that the amount of rent so unpaid was two hundred and fifty-seven dollars and thirty-three cents, that then the said Lelia S. Lee, had a right to distrain for said rent so unpaid, and that there is nothing in the paper dated April 22, 1879, affecting her said right.

The Court (GILMOR, J.,) rejected the plaintiff's prayers and granted the first and second prayers of the defendants, and rejected their third prayer. The plaintiff excepted, and the verdict and judgment being for the defendants, the plaintiff appealed.

The cause was argued before BOWIE, GRASON, MILLER, ROBINSON and IRVING, J.

*Wm. H. S. Burgwyn* and *Innes Randolph*, for the appellant.

Cahill *vs.* Lee.

*Randolph Barton* and *Skipwith Wilmer,* for the appellees.

MILLER, J., delivered the opinion of the Court.

In this case an action was brought by a tenant against a married woman and her husband, to recover damages for an alleged illegal distraint made by the wife as landlord. The declaration also contains a count averring that the property distrained was so improperly exhibited and allotted for sale, that it did not bring the best prices, but sold for much less than its fair value.

1st. The first ground of complaint is that the distraint was premature. The undisputed proof in the case shows that the plaintiff, Cahill, in 1868, took from Symington, a sub-lease for ninety-nine years, renewable forever, of the lot and premises upon which the property distrained was found, at an annual ground rent of $514.67, payable in equal instalments on the 10th day of April and October in each year. In 1874, Symington sold and conveyed his interest in the premises to the defendant, Mrs. Lelia S. Lee, and the deed of conveyance was duly recorded in April of that year. Cahill thereafter regularly paid the rent to Mr. Lee, the husband, up to the 10th of October, 1878, and the distraint by his wife was made on the 30th of April, 1879, for the six months rent of $257.33, due on the 10th of April, 1879. The plaintiff contends she had no right to distrain at this time, because of a certain written agreement between him and her husband made on the 22nd of April, the effect of which he insists, was to work either an equitable surrender of his lease to her, and an acquittance to him of the rent then due, or an extension of the time for payment thereof until the first day of May, and therefore no distress could be lawfully made until after that day. The plaintiff also offered proof, (which the Court rejected,) tending to show that apart from this written agreement, there was an independent collateral parol contract made at the same time by Mr.

Lee, that no proceedings for collecting the arrearages of rent should be taken until after the first of May, or for a reasonable time after the 22nd of April. Mr. Lee in his testimony, and on cross-examination by the plaintiff, denied that any such parol agreement was ever made, but whether it was or not, or whether the written agreement, if it had been made by Mrs. Lee herself, could when properly construed, be held a release of all rent then due, or whether such parol agreement was inconsistent with the terms of the written agreement made at the same time, and therefore no proof of it could be offered, are all questions not necessary to be decided. By the written agreement, Cahill agreed to surrender his lease not to Mrs. Lee, but to J. Boykin Lee in his own right, and not as agent of his wife, and her name is not mentioned in the paper. There is no proof whatever in the record, that Mr. Lee had any authority from his wife to make this agreement on her behalf, or to enter into any arrangement or understanding with her tenant, by which her right to distrain could be suspended, postponed or in anywise affected, or that she ever ratified or adopted, or even knew of any such agreement or understanding. He was simply her agent to collect the rent. This is all the authority he was entrusted with by her, and we are all clearly of opinion that this agency did not carry with it the power to make such agreements as these. It follows, therefore, that there was no error warranting a reversal of the judgment, in the rulings of the Court below in the first, second, third and fourth exceptions, nor in granting the defendant's first prayer, and rejecting the first, second and fifth prayers of the plaintiff.

2nd. It has also been argued, that there was irregularity in the appraisement, and that the notice of the distraint and sale was insufficient. But we find nothing substantial in either of these points. The Code, (*Art.* 63, *sec.* 13,) provides that not more than two appraisers

shall be summoned, and prescribes their compensation. The Statute of 2 *W. & M., ch.* 5, declares that the goods shall be appraised by two "sworn appraisers," and this phrase merely means that two indifferent persons shall be sworn to appraise the goods distrained according to the best of their understandings. They must be persons who are reasonably competent, for otherwise it would be an abuse of the statute, but they need not be professional appraisers. *Roden vs. Eyton*, 60 *Eng. C. L. Rep.*, 427. The appraisers in this case were the auctioneer and the watchman, who was left in charge of the property distrained, which consisted chiefly of lumber in a lumber yard, but there is no proof in the record to show they were not reasonably competent persons, though they may not have been lumber merchants or specially acquainted with the lumber trade. The same statute also provides that notice of the distress taken, with the cause of such taking, is to be left at the chief mansion house or other most notorious place on the premises charged with rent distrained for. Here the leased lot was used by the tenant as a lumber yard, and the notice of the distraint and sale was posted upon the premises, and was also advertised once in the Baltimore Sun newspaper. In form it is substantially the same as that set out in *Latrobe's Justice, sec.* 816, and we find no valid objection to it. In these respects, therefore, there has been no substantial departure from the requirements of the statute, and the Court was right in rejecting the plaintiff's fourth prayer.

3rd. We come now to consider the case made under the second count of the declaration, which charges that the property seized was not properly lotted and exposed for sale, and, therefore, did not bring the best price, or its fair value. The manner of sale in such cases is not prescribed by our Code, nor by the Statute of 2 *W. & M., ch.* 5. The latter statute simply makes it lawful for the landlord, in case the tenant fails to replevy within five

days, "to sell the goods and chattels so distrained, for the best price can be gotten for the same towards satisfaction of the rent." Under this provision, if the goods be prepared and offered for sale in a reasonable manner, and the sale be fairly conducted at public auction, (and in a case like the present on the premises) the price realized will be presumed to be "the best that can be gotten for them," and the landlord will not be responsible. But it is well settled, that an action will lie against the landlord upon the equity of this statute, for improper management of the property, and an improper offering of it for sale, so that it did not sell for the best price within the meaning of this provision. *Mayne on Damages*, 323; 1 *Addison on Torts*, 663. Thus in *Poynter vs. Buckley*, 5 *Carr. & Payne*, 512, there was an action for an excessive distress, with a count for not selling at the best prices, and the plaintiff proposed to show, that the property distrained, which consisted of materials used by coachmakers, was kept in the rain, and that at the sale the articles were *not properly lotted*, and, therefore, did not sell for a good price. TINDAL, C. J., held the evidence was admissible, because the mismanagement imputed was so nearly connected with the sale, and it was alleged, that in consequence of this mismanagement and neglect, the property did not sell at better prices. The cases of *Ridgway vs. Lord Stafford*, 6 *Excheq.*, 404, and *Frusher vs. Lee*, 10 *Mees. & Wells.*, 709, are other instances of such actions being brought and maintained. What will constitute such mismanagement as will make the distrainer liable, must depend upon the circumstances of each case, and the character of the property seized and sold. For instance, it would be wholly unwarrantable to sell in one lump, and at one offer, all the furniture in a dwelling-house, or all the goods in a shop or store. In such cases it is manifest the property should be properly lotted and sold in parcels. Here, as has been stated, the property

distrained, consisted mainly of lumber in a lumber yard, and was sold for about $300. The plaintiff offered evidence to the effect, that the appraisers collected the lumber into sixty lots, "shaping it up," as they called it, whereby the valuable lumber, and that of a lower grade was mixed, and that he complained of the mode in which the sale was being made, but his complaints were disregarded. He further offered the evidence of dealers in lumber, and practical builders, who were present and purchasers at the sale, that the fair value of the lumber properly exhibited, and lotted was $1000; that it would have sold for a better price if it had not been "shaped up," as the appraisers called it, that the auctioneer made no mention of the quality or quantity in the several lots sold, that it was impossible without pulling the piles to pieces in some cases to know what was being sold, owing to the manner in which the lots were shaped up, and in consequence purchasers bid much less than they otherwise would, had they known the number of feet and quality of the lumber they were buying, and that in consequence of this mismanagement and improper allotment, it brought much less than its fair value. On the other hand, proof was offered by the defendants, to the effect that the lumber was fairly lotted and exhibited, that it was not necessary to take it to pieces, in order to find out what was in the several lots, that it brought its fair value, and that the sale was in all respects fairly conducted. It is not our province to determine these questions of fact, or to express any opinion as to the weight of evidence. They should have been left to the finding of the jury, but it is plain that this was not done. The Court not only rejected the plaintiff's third prayer, but granted the second prayer of the defendants. By the granting of this latter prayer, the jury were instructed on this point in plain terms, that their verdict must be for the defendants, provided they found that the landlord proceeded to sell the lumber at

Cahill *vs.* Lee.

public auction to the highest bidder. It is clear that under this instruction, the jury were forbidden to consider the questions whether the lumber was properly lotted and exhibited for sale, and whether in consequence of mismanagement in this respect it sold for less than it otherwise would. This in our opinion was error, and for that error the judgment must be reversed and a new trial had. In so deciding, we do not mean to say the plaintiff's third prayer was correct, and ought to have been granted. It is undoubtedly open to the criticism of the appellee's counsel, that it was calculated to mislead the jury, because of the way in which the terms "best prices" are used in it, and it is also faulty in other respects. The damages in such cases depend upon the actual loss the plaintiff can prove. *Mayne on Damages,* 325. The jury should have been instructed to the effect that if they found from the evidence that the lumber seized and sold under the distraint proceedings, was not lotted and exhibited for sale in a reasonable and proper manner, and in consequence thereof, it failed to sell at better prices than were obtained for it at the sale, then they may find for the plaintiff under the second count in the declaration, and the measure of damages is the fair market value of the lumber at the time, and in the condition it was when seized, less the amount of rent discharged by the proceeds of the sales of it actually made.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 21st January, 1881.)