EASTON *et al. v.* HOUSTON & T. C. RY. CO. *et al.*, (PULLMAN PALACE CAR CO., Intervenor.)

*(Circuit Court, E. D. Texas. May 21, 1889.)*

1. RECEIVERS—LIABILITY ON COVENANTS OF INSOLVENT.
    Where receivers of a railroad company, under an order of court authorizing them to take charge of all the company's property of every description, including leases, carry on the road, and have the use and benefit of certain sleeping-cars, with knowledge of the terms of a lease under which the cars were held and used by the company, they become the assignees of the company, and are bound to perform its covenants as to the care and return of the leased cars.

**2. SAME—INTEREST.**

    Interest will not be allowed on the sum to which the car company is entitled as damages under the terms of the lease.

In Equity. On exceptions to master's report in the matter of the intervention of Pullman Palace Car Co.

*Percy Roberts*, for intervenor.

*Farrar, Jonas & Kruttschnitt*, for receivers.

PARDEE, J. The special master, among other things, reports in this case:

"On the 12th of December, 1871, the Houston & Texas Central Railway Company, the defendant in this case, entered into a written contract, above referred to, with the Pullman Palace Car Company, an Illinois corporation, in which, among other things, it was agreed that for the mutual benefit of the contracting parties the car company would furnish to the railway company a number of new and improved drawing-room and sleeping cars, sufficient to meet the demands of travel over said railroad; the contract to be operated for 15 years from its date, unless sooner dissolved for cause, as therein provided. The car company undertook to keep in good repair, and renew, as might be required, the carpets, bedding, and upholstery of said cars, except such repairs and renewal as might become necessary from injury to the cars by accident or casualty. The railway company undertook to repair all damages to the cars occasioned by accident or casualty, and also at its own expense furnish fuel for said cars, and material for the lights, and shall wash and clean said cars, and shall also keep said cars in good order and repair, including renewal of worn-out parts, and all things appertaining to said cars, necessary to keep them in first-class condition. The contract does not provide for the payment of any rent or hire by the railway company for the use of the cars, the consideration between the parties being, in substance, that the one should furnish, and the other have or transport, them; the car company having the right to sell the privileges of the car, while the railway company, by their use, were enabled to afford better accommodations to such of the traveling public as desired to avail themselves of such advantages. Under this contract the car company furnished the railway company three sleeping-cars,—the 'Houston,' the 'Preston,' and the 'San Jacinto,'—which cars were in possession of, and being operated by, the railway company on the 24th day of February, 1885. On the 24th of February, 1885, the property of said railway company passed into the custody of Messrs. Benjamin G. Clarke and Charles Dillingham, receivers, under an order of this court, of date the 20th of that month, entered in equity suit No. 185 on the docket of that court, entitled '*The Southern Development Company* v. *The Houston & Texas Central Railway Company.*' The cars passed into the possession of said receivers on that date, and were operated by them as before they had been operated by the railway company, until the 10th July, 1886, when said receivers transferred the possession of said cars to their successors in office, Easton, Rintoul, and Dillingham, the receivers in this cause, and the defendants in this intervention, who continued to use and operate the cars as before they had been used and operated, until the termination of said contract, December 12, 1871. The receivers in said suit No. 185, Clarke and Dillingham, were informed at or about the time in December, 1885, they took possession of the cars referred to, that they were held and being operated by the railway company under the aforementioned contract, and the receivers in this cause had like notice and knowledge; but the receivers in neither of said causes

v.38F.no.10—50

made any contract or agreement with the car company, except such, if any, as arises from the continued use by them of the cars with the knowledge of the contract. It is alleged in the petition that on the 5th of October, 1886, the contract of December 12, 1871, was changed by oral agreement between the car company and the defendants herein, so as to provide that thereafter the car company would keep the cars in repair, and the defendant receivers would put them in good repair before they delivered them to the car company, to be by it kept in repair under the alleged oral agreement; and, further, that the amount necessary to put them in such repair should be determined by experts mutually agreed upon, which amount should be paid by such receivers. There is no evidence in support of these allegations. As the case is presented, the said cars 'Houston,' 'Preston,' and 'San Jacinto' passed into the possession of said receivers, Clarke and Dillingham, subject to the contract aforesaid between the car company and the railway company, in which it was provided, among other things, that the railway company would keep said cars in good order and repair, including renewal of worn-out parts, and all things appertaining to said cars, necessary to keep them in first-class condition. This contract was known to said receivers when they took possession of the cars, and was known to their successors, the present receivers, and defendants herein, when the cars passed into their hands; and I am of opinion, and so find, that the continued use by said receivers of said cars, under these circumstances, was, in legal contemplation, an adoption by them of the contract, and rendered the defendants in this suit liable to the car company under the above-quoted terms of the contract, without regard to the condition of the cars when received by them.

"It is agreed between the parties, and I therefore find the facts so to be, that at the expiration of the term of said contract the said sleepers were inspected by experts appointed by said receivers and by the Pullman Palace Car Company, and that it was found by the said experts that it would cost the sum of seven thousand one hundred and seventy-two and fifty-five one hundredths dollars to place the said three sleepers in the same condition as they were in at the time they were assigned to the said Houston & Texas Central Railway Company on their said contract, and that the amount found by said experts correctly states the cost of said repair. It is further agreed between the parties to this suit that the damages to the cars necessitating the repairs determined by the experts, if apportioned between the railway company, receivers Clarke and Dillingham, and receivers Easton, Rintoul, and Dillingham, would be as follows:

CAR 'HOUSTON.'

| | |
|---|---|
| Houston & Texas Central Railway Company, | $1,558 80 |
| Clarke and Dillingham, | 997 50 |
| Easton, Rintoul, and Dillingham, | 187 10 |
| | $2,743 40 |

CAR 'PRESTON.'

| | |
|---|---|
| Houston & Texas Central Railway Company, | $1,485 36 |
| Clarke and Dillingham, | 997 50 |
| Easton, Rintoul, and Dillingham, | 178 29 |
| | $2,661 15 |

CAR 'SAN JACINTO.'

| | |
|---|---|
| Houston & Texas Central Railway Company, | $1,031 25 |
| Easton and Rintoul, | 660 00 |
| Easton, Rintoul, and Dillingham, | 123 75 |
| | $1,815 00 |

"The contract in evidence required the car company to furnish new cars to the railway company, to be in elegance and comfort satisfactory to the general superintendent of that company. The experts found that it would cost seven, thousand one hundred and seventy-two and fifty-five one-hundredths dollars to place them in the same condition they were in at the time they were assigned to the railway company. The contract required the railway company to 'keep the cars in good order and repair, including the renewal of worn-out parts, and all things appertaining to said cars, necessary to keep them in first-class condition.' The contract did not require that the cars should be returned to the Pullman Palace Car Company in the same condition as when they went into the hands of the railway company under the contract of 1871. I find that the obligation to keep the cars in good order, repair, first-class condition, etc., notwithstanding the proviso as to the removal of worn-out parts, etc., does not mean that the cars shall at the termination of the contract be in the same condition as when assigned to the railway company. Thus construing the contract in the evidence, I find no evidence by which to determine what amount was necessary to place the cars in first-class condition, and it was to do this, and nothing more, that the defendants were bound. The evidence only establishes what amount was necessary to place them in the same condition as when new,—some 14 years prior to the termination of the contract. If it be held that the amount determined by the experts as necessary to place the cars in the same condition that they were at the time they were assigned to the railway company should be construed to mean that such amount was necessary to place them in first-class condition, then I recommend that an order be entered in this cause that the receiver Mr. Charles Dillingham do pay the intervenor, the Pullman Palace Car Company, the sum of seven thousand one hundred and seventy-two and fifty-five one-hundredths dollars. The intervenor prays for interest; but it does not appear when said sum was expended, and I find that interest cannot be taxed, except from that date. I am of the opinion, and so find, that the evidence in this cause does not show what amount of money was necessary to place the said cars 'Houston,' 'Preston,' and 'San Jacinto' in first-class condition, as required by the contract between the railway company and the Pullman Company, and that therefore petitioner, upon whom rests the burden of not only establishing its rights of recovery, but likewise the amount of such recovery, has not shown such facts as enables the court to render a moneyed decree under the allegations of its petition, and therefore it cannot recover in this action."

The intervenor has filed exceptions to this master's report: *First*, to the conclusion of the said master, that the costs and expenses of putting the cars "Houston," "Preston," and "San Jacinto" in first-class condition, after the termination of the lease of those cars by the railway company, is not shown by the evidence; *second*, to the conclusion of the master that no interest is due the intervenor. Thereupon, the following agreement was made between the parties:

"It is agreed by the undersigned that the amount due the Pullman Company to be paid by the receivers is, as shown by the estimate of the experts, $7,172.55, provided the court should decree that the contention of the Pullman Palace Car Company as to the liability of the receivers is well founded. If, on the other hand, it is found by the court that the receivers are liable, as they contend, only for the repairs made necessary by their use of the cars, then it is agreed that the sum due the Pullman Palace Car Company by the receivers, as shown by the estimate, is $3,096.74."

Upon these exceptions and this agreement the case is submitted. The effect of the agreement is to present to the court the single question.

whether the receivers, having taken possession of the cars referred to under the several orders in that behalf made by this court in this case, and having operated them with full knowledge of the contract of lease, and the burdens assumed by the railway company are bound by the terms of said lease as assignees of the railway company. On this question the master has reported that—

"The continued use by the receivers of said cars, under the circumstances, was, in legal contemplation, an adoption by them of the contract, and rendered the defendant in this suit liable to the car company, under the above-quoted terms of the contract, without regard to the condition of the cars when received by them."

The orders of the court appointing Clarke and Dillingham, and afterwards Easton, Rintoul, and Dillingham, receivers of the Houston & Texas Central Railway Company authorize and direct them as follows:

"To take possession of the money and assets, real and personal, road-bed, road, iron, ties, lands, rights of way, rolling-stock, leases, franchises, and all other rights of property whatsoever of the said Houston & Texas Central Railway Company, wherever the same may be found, with power to manage, control, and exercise all the franchises whatsoever of the said railway company, * * * and in the meantime, and until another order of this court be rendered, to run, operate, and manage the railways of the said defendant railway company, and to manage and control all of the said property and affairs of the said defendant railway company."

Here is authority—almost express authority—for the receivers to take possession of the lease between the intervenor and the railway company, and to run, operate, and manage the cars furnished by the intervenor under the said lease. Under this authority, the receivers, with full knowledge of the obligations of the railway company, and the condition of the property furnished thereunder, did take possession of the lease and leased property, and operated the same, enjoying all the advantages thereof, and all for the benefit of the trust fund. It would seem that, under this state of facts, the receivers, fully authorized thereto, became the assignees of the railway company, and thereby legally and equitably obligated themselves to perform the several covenants undertaken by the company as to the care and return of the leased property. The lease in question was an entirety; of necessity an assignment or assumption thereof was of the whole, and not of any particular part. For adjudicated cases in point, see *Woodruff* v. *Railroad Co.*, 93 N. Y. 619; *Dorrance* v. *Jones*, 27 Ala. 630; *Pugsley* v. *Aikin*, 11 N. Y. 494; *Sutliff* v. *Atwood*, 15 Ohio St. 186; and *People* v. *Dudley*, 58 N. Y. 323. On rights, powers, and duties of receivers in regard to contracts, see Beach, Rec. §§ 249, 257, 361, 363, and cases there cited. The demand of the intervenor is for damages against the receivers for non-compliance with their assumed contract. By the agreement, on which the case is now heard and decided, the amount of damages, in case the court shall decree the intervenor's contention well-founded, is fixed at $7,172.55. In this state of the case the court does not feel warranted in adding to the agreed damages further damages in the shape of interest. A decree will be entered sustaining the exceptions to the report of the special master

and in favor of the intervenor, directing Mr. Charles Dillingham, receiver of the Houston & Texas Central Railway Company, to pay to intervenor, in satisfaction of his damages as aforesaid, the sum of $7,172.55, and for all costs.