PERRIN & SMITH PRINTING COMPANY, Respond-
ent, v. THE COOK HOTEL & EXCURSION COM-
PANY, Defendant; SIMMONS et al., Appellants.

St. Louis Court of Appeals, March 27, 1906.

1. **LANDLORD AND TENANT:** Payment of Taxes as Rent.
Where a lease for a certain term provided for the payment
of a gross sum in cash as rent, and, in addition, for the payment
of the taxes which might accrue on the premises during the
occupancy by the tenant, which taxes were to be paid "for the
same consideration," as the other payments of rent, the pay-
ment of the taxes was part of the rent because a part of the
consideration for the occupancy of the premises.

2. ———: **Receiver as Lessee: Election to Accept Lease.** Where a receiver in an action against a lessee was put in possession of the leased premises, whether or not he was liable on the covenants of the lease to pay rent, or merely liable for a reasonable rental during his occupancy, depended upon whether or not he elected to accept the lease and occupy the premises under it.

3. ———: ———: ———. Where land was leased for the purpose of constructing a hotel thereon, and a receiver, in an action against the lessee, was put in charge of the premises before the building was finished, and petitioned the court for authority to finish the building and operate it, this was an election to hold under the lease and pay rent according to its terms.

4. ———: ———: **Taxes as Part of Rent.** And where the lease in such case provided for a gross sum to be paid as rent for the entire term and for taxes accruing on the premises, and the lessee before the appointment of a receiver had paid the cash sum provided, and the taxes provided for accrued after the receiver was put in posssssion, the receiver was liable for all the taxes covering the period both before and during his possession.

5. ———: ———: ———: **Priority of Rent.** And the lessors, having paid such taxes, were entitled to priority in their claim for the funds in the receiver's hands, the proceeds of the sale of improvements, as against the holder of a receiver's certificate issued for expenses incurred in completing the building.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*).

*Kehr & Tittmann* for the Intervenors, Margaret P. and Sarah E. Simmons.

(1) The covenant or ageement in the lease to pay the taxes assessed against the demised property that were due and payable during the year 1904, must be construed as one to pay the taxes as part of the rent. Knight v. Orchard, 92 Mo. App. 471; Elliott v. Gantt, 64 Mo. App. 252; McManus v. Shoe & Clothing Co., 60 Mo. App. 218. (2) The appointment of the receivers

did not have the effect of changing any rights of action or of changing the contract relations existing between the original parties. Title & Trust Co. v. Brady, 165 Mo. 209, 65 S. W. 303. (3) Under the order of the court of May 31, 1904, directing receiver Ten Broek to take charge of "all and singular the property of the Cook Hotel & Excursion Co. of every description" in· cluding "all leasehold interests" and under the further order of court of June 23, 1904, appointing Joseph A. Wright, co-receiver and decreeing that "the title to all the assets, property and effects of said defendant company are hereby vested in said receivers," the receivers became assignees of the lease, a privity of estate was created between them and the lessors, and they became legally and equitably obligated to perform the coven· ants of the lease. Easton v. Railroad, 38 Fed. Rep. 784; Wells v. Higgins, 132 N. Y. 463; Trust Co. v. Railroad, 150 U. S. 300; Thompson v. Greeley, 107 Mo. 590, 17 S. W. 962; Martin v. Black, 9 Paige Ch. 644. (4) But, in any event, since the court and the receivers adopted the lease, took possession of the demised premises, used and occupied them for the benefit of the estate, improved them and remained in the continued and uninterrupted possession of them until after the expiration of the term created by the lease, the receivers became liable upon the covenants of the lease and were bound to pay the rent due thereunder. Smith on Receiverships (2 Ed.), pp. 221-222, secs. 122-123; High on Receivers, sec. 273; Gluck & Becker on Receivers, p. 826; Machinery Co. v. Hughes, 62 Ill. App. 318; Woodruff v. Railroad, 93 N. Y. 624; Frank v. N. Y., etc., 122 N. Y. 459; De Wolf v. Trust Co., 134 Ill. 435; People v. Ins. Co., 30 Hun. 142; Royce v. Bakewell, 37 Mo. 492; Ecker v. Railroad, 8 Mo. App. 223; In the Matter of Otis, 101 N. Y. 585. (5) Such rent thus due is a superior claim to other creditors; it is a part of the expense of the administration of the estate, it is to be paid according to the rate fixed by the lease and is to be paid out of the trust

funds. Link Belt Co. v. Hughes, 62 Ill. App. 318; Nelson v. Kalkhoff, 60 Minn. 305; Riggs v. Whitney, 15 Abb. Pr. 390; Hatch v. VanDervoort, 54 N. J. Eq. 511.

*Nathan Frank, Joseph A. Wright* and *Joseph S. McIntyre* for respondents.

(1) Primarily the lessor is liable for taxes, and solely through express covenant in the lease can the lessee be held for taxes. as a part of the rental charged. Railroad v. Railroad, 63 Vt. 1; Leach v. Goode, 19 Mo. 501; Hendrix v. Dickson, 69 Mo. App. 197. (2) The decree, and the issuing of receiver's certificates thereunder, created a prior lien to that given the intervenors under the lease. Wallace v. Loomis, 97 U. S. 146; Miltenberger v. Railroad, 106 U. S. 286; Bank v. Coal & Coke Co., 115 Fed. 878; Anderson v. Condict, 93 Fed. 349; Trust Co. v. Tel. Co., 148 N. Y. 315; Trust Co. v. Railroad, 103 N. Y. 245; Lewis v. Steel Co., 183 Pa. 248; Hoover v Railroad, 29 N. J. Eq. 4; Osborne v. Colliery Co., 96 Va. 58; Meyer v. Johnston, 53 Ala. 237. (3) Failure to intervenors to record their lease bars any recovery to the prejudice of the holders of the receivers certificates, in the absence of positive and affirmative proof of notice of the terms of this lease by the holders of the receivers' certificates. R. S. 1899, secs. 923, 924, 925; Freeman v. Moffitt, 135 Mo. 269, 36 S. W. 640; Bank v. Rohrer, 138 Mo. 369, 39 S. W. 1047; Wells v. Pressy, 105 Mo. 164, 16 S. W. 670; Bailey v. Winn, 101 Mo. 649, 12 S. W. 1045; Keith v. Keith, 97 Mo. 223, 10 S. W. 597; Callaway v. Fash, 50 Mo. 420; Youngblood v. Vastine, 46 Mo. 239; Land & Lumber Co. v. Robertson, 89 Mo. App. 480; Faxon v. Ridge, 87 Mo. App. 299; Olcott v. Kelley, 7 Mo. App. 561.

STATEMENT.—On October 21, 1903, Margaret P. and Sarah E. Simmons leased to the Cook Hotel & Excursion Company, for a term to begin on that day and end Jan-

uary 1, 1905, a tract of land in the city of St. Louis. The lessee will be spoken of in this opinion as the hotel company. The lease on the ground given by the intervenors to the hotel company contained, among other paragraphs, the following which are material on this appeal.

"2. For and in consideration of the grant of the term aforesaid, the lessee above named, for itself and its assigns, covenants to pay, as rent for the use and occupation of said tract of land, the sum of five thousand dollars ($5,000), one-half of which amount shall be paid contemporaneously with the execution and delivery of this lease and the remaining twenty-five hundred dollars ($2,500) on the second day of August, A. D., 1904. The lessee also covenants and agrees to pay the taxes assessed against said proprety that are due and payable during the year 1904, and to pay the same between the first day of September and the thirty-first day of December of that year and to deliver the tax receipts to the lessors. The lessee, for the same consideration, also hereby agrees and covenants to pay to the lessors, prior to the expiration of the term of this lease, a sum sufficient to pay all of the taxes, state and municipal, that may be assessed on the first day of June, 1904, upon the improvements which the lessee may erect or cause to be erected on the demised property. It is understood between the parties that the tax on the improvements aforesaid cannot be paid to the public authorities before the first day of September, 1905; but it is agreed that the value of the improvements, as assessed, shall be ascertained during the term aforesaid and the amount of the taxes thereon computed and that a sum equivalent to the amount of the taxes so computed, shall be paid to the lessors prior to the expiration of the term aforesaid.

"3. The lessee above named hereby covenants and agrees to have the improvements, which it may erect upon the demised premises, fully and entirely removed therefrom and the tract above described leveled off and

placed in good condition and all the rubbish thereon fully removed, on or before the first day of February, 1905, so that the lessors shall be at no expense whatsoever in removing said improvements.

"4. The lessee above named further covenants and agrees that the lessors shall have a lien upon all of the improvements which it may erect upon the demised premises, to secure the payment of the installment of rent above reserved, which falls due on August 2, 1904, and as security for the payment of the taxes aforesaid, which the lessee agrees to pay, and for the faithful performance, on the part of the lessee, of all other covenants and agreements on its part made and entered into by virtue of any of the provisions of this lease."

The tract was situate near the grounds of the Louisiana Purchase Exposition Company and the lease contemplated the erection of a hotel on the premises to be conducted during the Fair. The lessee partly erected the hotel but ran out of funds before it was completed. On May 31, 1904, the Perrin & Smith Printing Company brought this suit in the circuit court of the city of St. Louis against the hotel company, alleging that about $32,000 had been expended on the hotel building and other improvements on the premises and $7,000 in payment of ground rent; that by the terms of the lease the hotel structure had to be removed at the end of the exposition; that in its unfinished condition it was practically valueless, but would be valuable if finished, because of the patronage it would receive while the exposition was in progress; that it could be completed and furnished in about two weeks and respondent, as a creditor of the lessee, was interested in its completion. The appointment of a receiver to take possession of all the property and assets of the lessee was prayed and that the court make such further orders in the proceeding as might be proper. On the allegations of the petition the court appointed Gerrit H. Ten Broek receiver of all the

118 App—4

property of the hotel company, including its leasehold interest on the ground of these intervenors. On June 20, 1904, Ten Broek, as receiver, made a report of the assets of the hotel company in which he stated that the assets consisted of the unexpired leasehold, with the unfinished three-story hotel building on it, on which building there had been expended up to date nearly $40,000, furniture aggregating in value $12,000 and other property worth in all two thousand dollars or more. The receiver recommended the completion of the hotel and its operation during the continuance of the World's Fair. Thereupon the court appointed Joseph A. Wright co-receiver with Ten Broek and ordered that certain work be done by the receivers in making the hotel ready for use and occupancy, in accordance with a proposition made by Caldwell & Drake, a firm of contractors. It was provided in the order that the cost of material and work furnished and done in finishing the building should not exceed $15,000 and that the furnishings and supplies for it should not exceed $10,000. It was further ordered that the receiver be empowered to pay the contractors Caldwell & Drake in receivers' certificates "of first lien import in due form," the amount of the accounts of said firm for work and material, plus forty per cent on the same; that the sum or sums so paid to Caldwell & Drake be allowed to the receivers in passing on their accounts and the receivers proceed to manage and operate the hotel when completed until the further order of the court; making monthly reports of their management. On December 10, 1904, the court ordered the receivers to advertise for sealed bids for purchasers of the hotel building and its contents. On December 17, 1904, the bids were reported to the court and the bid of Caldwell & Drake was ordered by the court to be accepted by the receivers and that they convey to said Caldwell & Drake the hotel building and all its contents for the sum of $9,000, to be paid in designated installments. Gerrit H. Ten Broek, the receiver first appointed, entered

into possession of the premises May 31, 1904, and he and his co-receiver Wright continued in possession until January 5, 1905. After the expiration of the lease they delivered the building to Caldwell & Drake. On January 12, 1905, the appellants Margaret P. and Sarah E. Simmons, by leave of court, filed their intervening petition in the present cause of the Perrin & Smith Printing Company against the hotel company. In said intervening petition the lessors of the ground recite the making of the lease to the hotel company and the terms and conditions thereof, together with the facts in relation to the appointments of the receivers. The petition then alleges that the cash rent to be paid for the use of the ground by the hotel company had been paid to the lessors, but that another part of the rent, to-wit; the taxes assessed against the property and which were due and payable during the year 1904, were not paid either by the lessee or the receivers, and the lessors, in order to discharge their real estate from the lien of the taxes, paid the same on January 16, 1905, to the amount of $1,097.76. It was further alleged that said taxes constituted part of the rent of the premises and part of the expenses of the receivership of the hotel company and should be repaid to the lessors (intervenors) as a preferred claim out of the funds in the hands of the receivers; wherefore it was prayed that the court order the receivers to pay said sum to the lessors. At the hearing the court dismissed the petition of the intervenors but allowed another intervening demand as a general claim against the assets of the insolvent company. The demand allowed is of no importance on this appeal, wherein the contest is between the intervenors and the holders of the receivers' certificates. The intervenors appealed.

GOODE, J. (after stating the facts).—In the fourth paragraph of the lease, a lien on all the improvements to be erected on the leased premise is reserved in favor of the lessors, to secure the payment by the lessee of one

installment of the cash rent and the taxes. This stipulation has attracted our attention; because the rule is that a receiver takes the property of the insolvent debtor subject to all liens on it, and accordingly, there might be reason for saying that the stipulated lien entitled the intervenors to a preference in that portion of the fund in the hands of the receivers which accrued from the sale of the improvements on the lot. [Smith, Receivership, sec. 68.] This matter has not been presented by counsel and therefore will be disregarded.

The first proposition raised against the preference asserted by the intervenors is that no rent was to be paid except five thousand dollars in cash. In other words, that the taxes provided against in the lease contract were no part of the rent. We do not accede to that interpretation of the instrument. That a gross cash rental of five thousand dollars for the whole term was reserved, is true. But, in addition, the lease provided for payment by the lessee of the taxes assessed against the ground which should become due and payable during the year 1904, and also of the increase of taxes which would be caused by the improvement of the ground by the lessee during the year 1904. The improvements were to be removed. But as they would stand on the ground during the year 1904, they would enhance the assessment of the premises for the taxes of the ensuing year. Now the lessors inserted covenants in the contract of lease to protect themselves against paying this increased assessment and also against the taxes on the ground that were assessed in 1903 and would fall due in 1904. What motive did the hotel company have for agreeing to pay those taxes if the payment was not regarded as rent? The payment was certainly part of the consideration to be rendered for the use of the premises, and issued out of the land. The taxes were intended to be rent and ought to be treated as such in this case, even if they lacked some technical element of rent; for instance that they were payable to the State instead of the land-

lord.  The stipulation for the payment of the taxes occurs in the same paragraph as the stipulation for the payment of the money rent and in the next sentence. Moreover, the proviso for paying the lessors a sum sufficient to pay all the taxes that might be assessed during 1904 on the improvements, states that said payment was to be made "for the same consideration" as the other payments were to be made to the lessors.  This mention of the consideration for the agreement to indemnify against those taxes, must have referred to the consideration for the payment of the $5,000, that is, to the rent of the land.  There is no question in our minds that payment of the taxes was part of the rent reserved by the lessors for the use of the premises.  Otherwise there was no consideration for the agreement to pay them. This doctrine is in accord with the decided cases on the subject.  In Elliott v. Gantt, 64 Mo. App. 248, it was declared that a covenant by the lessees in a lease to pay taxes on the premises demised, would be construed to be an agreement to pay them as part of the rent, unless the contrary intention clearly appeared.  The conclusion that in this case the taxes were rent is supported by these additional cases.  [McManus v. Clothing Co., 60 Mo. App. 216; Knight v. Orchard, 92 Mo. App. 466, and Gedge v. Shoenberger, 83 Ky. 94.]

The receivers took possession of the leasehold May 31, 1904, and continued in occupancy until January 5, 1905, or during the remainder of the term of the lease. Without regard to whether they were in possession as constructive assignees of the lease and under its provisions, or as independent tenants, the court wherein the receivership proceeding is pending, should allow a reasonable rent for the use and occupation of the premises while the receivers held them.  The condition on which a receiver, or anyone else, may occupy another person's land, is payment of rent.  There seems to be some discrepancy in the cases as to whether the rent to be paid by a receiver during his occupancy, when he has done

nothing to show acceptance of the lease, should be the same as that reserved in the lease to the insolvent lessee, or simply a reasonable sum. It was decided in Bell v. Am. Protective League, 163 Mass. 558, that he should pay reasonable rent without regard to the amount named in the lease. The opposite conclusion was reached in Nelson v. Kalkhoff, 60 Minn. 305, on the ground that though a receiver does not, by the mere fact of entering on demised premises, accept the burdens of the insolvent's lease for the unexpired term, his right to enter is based on the lease, and as he excludes the owner of the premises from possession while he holds them, he should pay the rent for which the owner was willing to be deprived of possession.

In our opinion the receivers in the present case held the premises as tenants under the lease. It has been decided by a court of the highest authority that in railway litigation, a receiver who takes possession of a leased line of railroad in proceedings against the lessee, does not, by the mere act of going into possession, become bound instantly for the performance of the lessee's covenant to pay rent, but has a reasonable time to elect whether he will adopt or repudiate the contract. [Railroad v. Humphreys, 145 U. S. 82; U. S. Trust Co. v. Railroad, 150 U. S. 287, 299.] This rule was declared on grounds which make it applicable in other instances than railroad receiverships, and it has been applied in others. [Nelson v. Kalkhoff, 60 Minn. 305.] In truth, the question of a receiver's liability for rent under the covenants of a lease on property put into his custody in a proceeding against an insolvent lessee, is determined, not by an arbitrary deduction from the act of the receiver in getting the property into his hands, but by a reasonable and equitable consideration of all the facts. In some respects a receiver who occupies the debtor's leasehold is in a situation analogous to the case of an assignee in bankruptcy or a general assignee for creditors who enters on a leasehold held by the insolvent debtor. In the opinion

cited, the rule regarding assignees in bankruptcy is quoted from a text-book as follows:

"A reasonable time was allowed the assignees to ascertain the value of the lease before they made their election; for which purpose they might have it valued and put up for sale without danger of such act being deemed an acceptance. If, however, they accepted a bidding, or dealt with the estate as their own, or used it in any manner injurious to persons entitled, they were not within their protection." [2 Platt, Leases, p. 435.]

The rule in Missouri in cases of assignments is the same as that embodied in the foregoing statement.

In Boyce v. Bakewell, 37 Mo. 492, an insolvent lessee had executed a general assignment for the benefit of his creditors. At the date of the assignment there was an unexpired lease on the premises, drawing an annual rental of $800, payable in monthly installments. The assignee took possession of the premises, in which there was a stock of goods, and kept up the stock for more than two years. After the assignee died, a demand for rent was exhibited against his executors. It was held that the general assignment was sufficient to convey the leasehold, but that the assignee was not bound to accept the assignment of the lease, he having an election whether to accept or reject it; that in any event he was liable for use and occupation as a tenant, for the time he was in possession of the premises, and whether or not he would be liable as assignee under the original lease, would depend on whether he had elected to accept the assignment of the lease and to hold under it. That a receiver's or assignee's liability on the covenants of a lease, depends on his electing to accept the lease and occupy the premises under it, is maintained by all the authorities that have come to our attention. In support of the proposition, in addition to those already cited, we cite the following cases: Woodruff v. Railroad, 93 N. Y. 609; In re Otis, 101 N. Y. 580, 585; Wells v. Higgins, 132 N. Y. 463; People v. Ins. Co., 30 Hun 142;

Martin v. Black, 9 Paige Ch. 641, 644; Link Belt Mach. Co. v. Hughes, 62 Ill. App. 318; DeWolf v. Trust Co., 134 Ill. 435; Hatch v. VanDervoort, 54 N. J. Eq. 511; Easton v. Railroad, 38 Fed. 784; High, Receivers (3 Ed.), 273; Smith, Receiverships (2 Ed.), sec. 128. That the receivers in this case, acting by direct authority of the court, elected to accept the lease and proceeded according to its terms, there can be no doubt. They petitioned for authority to do the very thing the original lessee wanted to do; that is, build the hotel and operate it, and this the court authorized them to do. Of course the receivers could not stay on or quit the premises at their pleasure. They had the right to continue during the term of their lease, or, after a reasonable time in which to investigate the matter, relinquish possession to the lessors. A clearer case could not be presented of receivers and the court under whom they were acting, deciding to adopt a lease. Having so decided, the receivers were bound to perform the covenants of the lease, including the covenant to pay rent. Cases in all respects like the present one, as far as the immediate point is concerned, are Hatch v. VanDervoort and Easton v. Railroad, supra.

As the entire cash rent was paid by the lessee, the receivers could claim, at most, only an apportionment of the unpaid taxes for 1904, so that they would have to pay no larger part thereof than the time they occupied the premises bore to the whole term of the lease. More than seven months of the term had expired before the receivers went into possession, and they occupied the premises about seven months. The liability of the receivers for the entire amount of the taxes, appears to turn on the fact that they did not fall due until September 1, 1904, when the receivers were in possession. Therefore, under our ruling that the taxes were rent, they constituted a part of the rent which accrued during the tenancy of the receivers — a tenancy which we have held was under the original lease to the hotel company.

The vital fact in this connection is that the receivers availed themselves of the lease to hold and use the premises for the benefit of the estate and its creditors; thereby keeping the lessors from enforcing a forfeiture for non-payment of the taxes, as the lease gave them the right to do. Hence, if the receivers were allowed not to pay the taxes when they accrued and still retain the premises, they would be allowed to deprive the lessors of their property without rendering the consideration which induced the lessors to relinquish possession of it. Such is not the law. A decision on the point is In re Silkstone, etc., Company, L. R., 16 Ch. Div. 158. In that case the insolvent company had a lease on coal mines with a right in the lessor to distrain for the rent, which fell due in semiannual installments on the third days of May and November. A winding up bill was presented in court October 7, 1880, the rent having been paid to May 3d preceding. A liquidator was appointed in November, and in December the lessors demanded the installment of rent which fell due on November 3d, or that the liquidator cease to work the mine. The demand was refused and on the hearing of the matter the liquidator contended that he was only liable for rent for the period since the winding up bill was presented. It was held that as he had elected to remain in possession of the property, he was bound to satify the conditions which entitled him to do so — that is, pay the full installment of rent which accrued after the proceeding was instituted, though most of it was for previous months. In the case at bar it does not appear that the lessors demanded the premises from the receivers, when the taxes were not paid; but as there is no pretense, or room for any, that the premises would have been relinquished by the receivers if demand had been made, this circumstance ought not to alter the equity in favor of the intervenors. In a later opinion it was declared that if an official liquidator appointed in a winding up proceeding under the English Companies' Act, retains a

leasehold of the insolvent company "for the purpose of advantageously disposing of it, or when he continues to use it, the rent of it ought to be regarded as a debt contracted for the purpose of winding up the company, and ought to be paid in full like any other rent or expense properly incurred by the liquidator for the same purpose." [In re Oaks Pitts Colliery Co. L. R. 21 Ch. Div. 322.] That opinion took a distinction, as the American cases do in receivership proceedings, between the liquidator merely entering on a leasehold to get rid of the lessee's property situate thereon, and his electing to hold under the lease. The rules laid down in the English case last cited were quoted and approved by the Supreme Court of the United States in Quincy, etc., Railroad v. Humphreys, 145 U. S. 82, 99. On the strength of those authorities we feel justified in holding that these receivers are bound to the intervenors for the entire amount of taxes which fell due during the occupancy of the receivers. Another case which supports this ruling is Easton v. Railroad, 38 Fed. 784.

The rental of leaseholds for which receivers are liable, is regarded as an expense incident to the administration of the receivership, and, like other costs, is to be paid before the assets of the debtor are distributed among his creditors. [Link Belt Co. v. Hughes, 62 Ill. App. 318.]

But it may be argued that the certificates issued by the receivers to Caldwell & Drake constituted costs of the receivership too; since they were given in payment for services in completing the hotel so it could be operated. In a sense it is true that the certificates represented what was deemed an expense necessary to be incurred in administering the debtor's estate. Receiver's debentures have been usually, if not exclusively, recognized in railroad litigation, when it was necessary for the receiver in charge of a railway to incur debts to maintain the property in a state of reasonable efficiency for the performance of the duties of the company to the

public as a common carrier. The necessities of such cases have caused to be evolved the doctrine of receivers' certificates and their right to priority over other demands. [Fosdick v. Schall, 99 U. S. 235.] It is doubtful if such debentures may be issued in receiverships of private corporations. [Wood v. Guarantee Co., 128 U. S. 421; Hooper v. Central Trust Co., 81 M'd. 591.] If the certificates issued in the present case be allowed validity for argument's sake, it is apparent that the claim of these intervenors for whatever rent they are entitled to be paid by the receivers, possesses an equity for priority as against the certificates; though the latter might enjoy an equity as against the demands of general creditors. It was not possible for the receivers to complete the hotel, so that it could be operated with profit for the benefit of the estate, except by retaining possession of the intervenors' ground. Hence, it would be inequitable to hold that the receivers might issue debentures for improvements on the ground, which would take precedence of the rent and exhaust the assets of the estate, leaving the rent unpaid.

It is said the lease was not recorded and, therefore, Caldwell & Drake are entitled to priority for their certificates. We can conceive of no theory on which the non-recording of the lease would confer an equity on the holders of the certificates as against the claim for rent. Those holders acquired no interest in the land by virtue of the receivers' certificates, either as lessees, mortgagees or purchasers. They have no title whatever for any length of time and claim none; but look to the money in the hands of the receivers. The Recording Acts were designed to give notice to subsequent purchasers of real estate, or those acquiring an interest in or lien on it, of the existence of prior rights in and to the land. The registry laws have nothing to do with this case.

The judgment will be reversed and the cause remanded with a direction to the court to grant priority

to the demand of the intervenors for the amount paid by them for taxes on the ground, out of the funds of the hotel company's estate.  All concur.