VINELAND SHOPPING CENTER, INC., PLAINTIFF-RE-
SPONDENT, v. LOUIS DE MARCO, DEFENDANT-APPEL-
LANT.

Argued June 6, 1961—Decided July 13, 1961.

*Mr. C. Zachary Seltzer* argued the cause for defendant-appellant (*Messrs. Lipman and Casella,* attorneys; *Mr. Philip L. Lipman,* of counsel).

*Mr. Thomas K. J. Tuso* argued the cause for plaintiff-respondent (*Mr. Joseph Tuso,* attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. This appeal involves a dispossess action. The county district court granted the landlord's motion for summary judgment. The Appellate Division affirmed, 65 *N. J. Super.* 223 (1961), and we allowed certification, 34 *N. J.* 324 (1961).

The lease is for a term of five years beginning June 15, 1957, at a monthly rental of $225, with an option in the

tenant to renew for a further term of five years. The complaint alleged a number of violations of the lease, but judgment was entered solely upon a finding that the tenant failed to pay sewerage charges under a covenant reading:

"Tenant agrees that it will pay all charges for electricity, water, gas, telephone, heat and fuel, sewer and other utility services used on the leased premises."

On June 10, 1960, plaintiff served upon defendant a notice "that your tenancy * * * is hereby terminated" for stated reasons, including the failure to pay the sewerage charge. That charge, with interest, was $182.85 and covered three semi-annual installments payable in advance, beginning with June 1, 1959. On the day the notice was served, defendant paid the charge directly to the Landis Sewerage Authority. The suit was started ten days later and hence after payment had been made.

The lease does not spell out the mechanics of payment of the sundry items listed in the covenant quoted above, by which we mean that it does not state whether payments are to be made to the suppliers or to the landlord upon the latter's invoice. The record is silent as to past practices. Indeed we do not know whether the sewerage authority billed the owner or the tenant. We know only that immediately upon service of the mentioned notice, defendant made the payment directly to the Authority. The record is devoid of any suggestion that plaintiff was injured or prejudiced by the delay. There was no prior demand for payment, plaintiff invoking the provision of the lease:

"Provided, however, that if any rents shall be due and unpaid or if default shall be made in any of the covenants, conditions and rules herein contained for a period of 30 days, then it shall be lawful for the said landlord at his option without notice and without any demand for said rent or for the performance of said covenants, conditions and rules or regulations, to declare this lease null and void and the said term ended and to re-enter the said premises and remove all persons therefrom or to proceed by action for the recovery of possession thereof, or otherwise however."

## I.

Initially we must consider the scope of appellate review.

The summary dispossess statute originated in 1847 (*p*. 142). The purpose was to give the landlord a quick remedy for possession. Appellate review was barred, thus giving finality to the trial court's judgment with respect to possession. The tenant was remitted to an action for damages in which the judgment in the possessory action had no binding effect upon the ultimate merits of the case. *McGann v. La Brecque Co., Inc.*, 91 *N. J. Eq.* 307, 308 (*E. & A.* 1920); *Opalach v. Cebulah*, 2 *N. J. Super.* 139, 141 (*App. Div.* 1949).

In actual practice it is doubtful the legislative objective was achieved. For one thing, such actions were viewed with much hostility, the courts dismissing for minute failures to meet the statutory prescriptions. Further, the former Court of Chancery exerted its power to relieve upon grounds not cognizable at law, a power which was upheld when relief was sought prior to the entry of judgment in the possessory action. *Crest Drug Store, Inc. v. Levine*, 142 *N. J. Eq.* 652 (*E. & A.* 1948); *Red Oaks, Inc. v. Dorez, Inc.*, 120 *N. J. Eq.* 282 (*E. & A.* 1936); *Sparks v. Lorentowicz*, 106 *N. J. Eq.* 178 (*E. & A.* 1930); *H. Windholz & Son v. Burke*, 98 *N. J. Eq.* 471 (*Ch.* 1925); 18 *N. J. Practice* (*Fulop and Kain, District and Municipal Courts*, 1954) § 1569, *p*. 140. Finally, it was held that the Legislature could not curb the inherent authority of the former Supreme Court to review the jurisdiction of lower tribunals, and hence the proceedings remained reviewable by *certiorari* to that extent. *Fowler v. Roe*, 25 *N. J. L.* 549 (*Sup. Ct.* 1856); *Stanley v. Horner*, 24 *N. J. L.* 511 (*Sup. Ct.* 1854). The present statute incorporates this decisional law, providing in *N. J. S.* 2A:18–59:

"Proceedings had by virtue of this article shall not be appealable except on the ground of lack of jurisdiction. The landlord, however, shall remain liable in a civil action for unlawful proceedings under this article."

In brief, the quest for a speedy possessory result has spawned procedural quarrels which delay access to the merits and frustrate the litigants who foot the bill. In 1951 the Advisory Committee on Revision of Statutes noted in *Suggested Changes to the Tentative Draft of the Revision of Titles 2 and 3 (2A:32–273, p. 92)*:

"Comment: The Committee has received a great many suggestions that landlord and tenant proceeding be made appealable. We do not oppose the principle of appeal in these cases but feel that under present economic conditions, to permit appeals would give the tenant an unfair advantage. The committee is not at this time ready to recommend that appeals be permitted."

The substance of the former statute, *R. S.* 2:32–273, was accordingly continued as *N. J. S.* 2A:18–59, which we quoted in the paragraph above.

█ Appellate review thus remains limited to matters of "jurisdiction." *Pennsylvania R. R. Co. v. L. Albert & Son, Inc.,* 26 *N. J. Super.* 508 (*App. Div.* 1953), certification denied 13 *N. J.* 361 (1953); *Davidson v. Burstein,* 10 *N. J. Super.* 91 (*App. Div.* 1950); *Hertzberg v. Siegel,* 8 *N. J. Super.* 226 (*App. Div.* 1950); *Opalach v. Cebulah, supra* (2 *N. J. Super.* 139). In passing we note that either party "may apply to the superior court, which may, if it deems it of sufficient importance, order the cause transferred" to it, *N. J. S.* 2A:18–60, in which event the final judgment "shall be appealable." *N. J. S.* 2A:18–61; *McCrory Stores Corp. v. S. M. Braunstein, Inc.,* 99 *N. J. L.* 166, 169 (*E. & A.* 1923). Thus, oddly, appellate review may be had if an order of transfer is obtained. Neither party here sought one.

The jurisdictional question is not merely whether the controversy is between landlord and tenant with respect to possession, for the Legislature did not commit the entire subject to the county district court. Rather that court was granted jurisdiction to adjudicate only in specified categories of disputes. They appear in *N. J. S.* 2A:18–53:

"a. Where such person holds over and continues in possession of all or any part of the demised premises after the expiration of his term, and after demand made and written notice given by the landlord or his agent, for delivery of possession thereof. * * *

b. Where such person shall hold over after a default in the payment of rent, pursuant to the agreement under which the premises are held.

c. Where such person (1) shall be so disorderly as to destroy the peace and quiet of the other tenants living in said house or the neighborhood, or (2) shall willfully destroy, damage or injure the premises, or (3) shall constantly violate the landlord's rules and regulations governing said premises, provided, such rules have been accepted in writing by the tenant or are made a part of the lease; or (4) shall commit any breach or violation of any of the covenants or agreements in the nature thereof contained in the lease for the premises where a right of re-entry is reserved in the lease for a violation of such covenants or agreements, * * *."

■ Our cases dealing with this statute have hewed a line separating the "jurisdictional" issue from meritorious ones. The established principle is that the trial court had jurisdiction if there was evidence from which it could find a statutory basis for removal. If that test is met, the judgment must be affirmed even though it is otherwise infected with error. *Leachman v. Kite,* 133 *N. J. L.* 240, 241 *(Sup. Ct.* 1945), affirmed o. b., 133 *N. J. L.* 612 *(E. & A.* 1946); *Hilyard v. Heinzer,* 3 *N. J. Misc.* 343, 348 *(Sup. Ct.* 1925), affirmed o. b., 102 *N. J. L.* 217 *(E. & A.* 1925); *Lit v. R. C. Maxwell Co.,* 96 *N. J. L.* 293 *(E. & A.* 1920); *Seidel v. Cahajla,* 129 *N. J. L.* 314, 315 *(Sup. Ct.* 1943); *Dedo v. Kuser,* 103 *N. J. L.* 223, 225 *(Sup. Ct.* 1927); *Montalvo v. Levinston,* 94 *N. J. L.* 87, 89 *(Sup. Ct.* 1920); *Moreland v. Steen,* 89 *N. J. L.* 383 *(Sup. Ct.* 1916); *cf. Turtur v. Schwarz,* 15 *N. J. Super.* 241 *(App. Div.* 1951).

## II.

■ We come then to the question whether on the record the trial court could find plaintiff proved a case within any of the statutory categories. Plaintiff says its case falls

within subsection "c(4)" of *N. J. S.* 2*A*:18–53, quoted above, *i. e.,* a breach of a covenant for which a right of re-entry was reserved. Defendant asserts the case comes within subsection "b," *i. e.,* a default in the payment of rent. As to that subsection, *N. J. S.* 2*A*:18–55 provides that if the tenant shall "on or before entry of final judgment" pay the rent and accrued costs to the clerk of the court, "all proceedings shall be stopped." Upon such payment the court's jurisdiction ends. *Seidel v. Cahajla, supra,* 129 *N. J. L.,* at *p.* 318. Here the payment was made before suit, and if the obligation is one for rent within the meaning of the act, the action must fail. Alternatively, defendant argues in effect that if the covenant falls within subsection "c(4)," nonetheless, since it involves only the payment of money, the statutory thesis with respect to "rent" permitting payment at any time before final judgment should be equally controlling.

## A.

As we have said, the former Court of Chancery had jurisdiction to intervene before final judgment in the dispossess action. It has long been settled that in a proper case equity will relieve a tenant from a forfeiture of his lease by reason of non-payment of money, upon the theme that the forfeiture provision was designed to insure performance and hence, performance having been had, such relief should be granted. *Sparks v. Lorentowicz, supra,* 106 *N. J. Eq.* 178; *D. Paradis Co. v. North Hudson Holding Co.,* 137 *N. J. Eq.* 430 (*Ch.* 1946); *Galka v. Tide Water Associated Oil Co.,* 133 *N. J. Eq.* 137 (*Ch.* 1943); *Fleming v. Fleming Hotel Co.,* 69 *N. J. Eq.* 715 (*Ch.* 1905); *Thropp v. Field,* 26 *N. J. Eq.* 82 (*Ch.* 1875); Annotation, 31 *A. L. R.* 2*d* 321 (1953); 1 *American Law of Property* § 3.96, *p.* 385 (*Casner ed.* 1952).

We need not here trace the contours of that doctrine. Our purpose is to deal with the apparent reason for the failure below to consider it. We refer to the doubt con-

cerning the power of the county district court to deal with equitable issues arising in a case which otherwise is within its jurisdiction. See *Scott v. Bodnar,* 52 *N. J. Super.* 439 (*App. Div.* 1958), certification denied, 29 *N. J.* 136 (1959); *Josefowicz v. Porter,* 32 *N. J. Super.* 585 (*App. Div.* 1954).

It is unnecessary to recount at length the familiar story of jurisdictional disputes between law and equity. For present purposes we note a distinction between (1) an action in which the primary right alleged or the principal relief sought is equitable, and (2) a law action in which an equitable defense is raised to defeat the claim or an equitable reply is advanced to defeat the defense. We are here concerned with the second category.

Courts of equity intervened before or after judgment at law to enforce concepts of justice they developed. From time to time courts of law adopted those principles, whereupon equity withheld its hand since the remedy at law had become adequate. To the extent that their doctrines diverged, we had one set of courts which could give only the wrong answer and another court which could give the right one. Courts of law could enter only an unjust judgment and the Court of Chancery could undo it. Much of the energy of the bench and bar was devoted to procedural maneuvers which, quite obviously, the litigants were not at all interested in and frequently could not afford.

The shuttling of suits between law and equity was one of the principal evils which led to the judicial reforms of the *Constitution* of 1947. *O'Neill v. Vreeland,* 6 *N. J.* 158, 169 (1951); *Donnelly v. Ritzendollar,* 14 *N. J.* 96, 105–106 (1953); *Tumarkin v. Friedman,* 17 *N. J. Super.* 20, 21 (*App. Div.* 1951), certification denied, 9 *N. J.* 287 (1952); *Curley v. Curley,* 37 *N. J. Super.* 351, 358 (*App. Div.* 1955); *In re Koehler's Estate,* 43 *N. J. Super.* 585, 597 (*App. Div.* 1957); *Township of Brick, Ocean County v. Vannell,* 55 *N. J. Super.* 583, 596 (*App. Div.* 1959). To avoid a recurrence of jurisdictional disputes, the Constitution "deliberately avoided any jurisdictional statements with

respect to law and equity." 1 *Constitutional Convention,* 1947, *p.* 474; *Curley v. Curley, supra,* 37 *N. J. Super.,* at *p.* 358. Indeed the Constitution affirmatively provided that the trial courts it created shall dispose of equitable issues and left the judiciary free to reach the same result with respect to such other courts as the Legislature might establish.

Thus the Constitution provides that the Superior Court shall have original general jurisdiction "in all causes," *Art.* VI, *sec.* III, *par.* 2; that the Law and Chancery Divisions shall "hear such causes, as may be provided by rules of the Supreme Court," *Art.* VI, *sec.* III, *par.* 3; and that "Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined." *Art.* VI, *sec.* III, *par.* 4. Accordingly both trial divisions of the Superior Court are required to employ the same principles of justice. So also with respect to the county court, the only other trial court the Constitution itself created, *Art.* VI, *sec.* IV, *par.* 5, provides that "in civil causes including probate causes, within their jurisdiction, and subject to law, [the county court] may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined." *Miske v. Habay,* 1 *N. J.* 368, 374 (1949); *Heuter v. Coastal Air Lines, Inc.,* 12 *N. J. Super.* 490 (*App. Div.* 1951); *Tumarkin v. Friedman, supra* (17 *N. J. Super.* 20).

To sum up the constitutional plan, (1) the Supreme Court was empowered by rule to allocate causes between the Law and Chancery Divisions of the Superior Court, (2) as to the constitutionally created trial courts, the substantive rules of law and equity were effectively merged into a single body of principles to the end that each court shall apply the truly controlling doctrine in actions within its jurisdiction, and (3) the judiciary was left free to achieve the

merger of legal and equitable concepts with respect to such courts as the Legislature might establish.

We shall now demonstrate that our rules of court are designed to bar jurisdictional squabbles so far as possible, and to that end require the county district court, as well as the constitutional courts, to determine actions within their jurisdiction upon the basis of the controlling principle, whether historically that principle was cognizable at law or in equity.

With respect to the first category of situations referred to above, in which the primary right asserted or the principal relief sought is equitable, *R. R.* 4:41-2 directs the action to be brought in the Chancery Division even though legal relief is also demanded. See *Steiner v. Stein*, 2 *N. J.* 367, 378 (1949). To minimize disputes with respect to this allocation, *R. R.* 4:41-3 provides for motions to transfer and sharply curtails the opportunity to prolong a controversy concerning the subject.

With respect to the second category mentioned above, *i. e.*, equitable issues arising by way of defense or avoidance in an action at law, *R. R.* 4:12-2 provides that "Every defense, legal or equitable, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the answer thereto, * * *." *R. R.* 4:12-8 provides for the waiver of defenses and objections not raised in accordance with the rules. Thus any matter which operates to defeat a plaintiff's claim or a defendant's answer must be advanced, and it is of no moment that it once bore the label "equitable" or was procedurally an equitable "counterclaim" rather than "defense." *Massari v. Einsiedler*, 6 *N. J.* 303 (1951); *Asbestos Fibres, Inc. v. Martin Laboratories, Inc.*, 12 *N. J.* 233, 239 (1953).

The foregoing rules of court apply directly to the Superior Court but they are made applicable to the county district court by reference. *R. R.* 5:2-1 applies these rules to the law division of the county court, and in turn *R. R.* 7:1-3

provides "The practice and procedure in the county district courts shall conform as nearly as may be to that in the law division of the county court, except where there is an express provision in the law or these rules to the contrary." There is no exception here pertinent by statute or rule.

Hence the county district court must accept any equitable issue offered to defeat an action within its jurisdiction or to avoid a separate defense to such action. The rules of court are plain; there no longer is a barrier to the rendition of the correct judgment. To hold otherwise would continue the procedural waste which the constitutional reform intended to end and indeed at a level of litigation wherein the litigants can least afford to bear it.

### B.

We have dealt at some length with the power of the county district court in order to lay at rest any doubt which may exist as to equitable defenses to an action within its jurisdiction. As we have said, the trial court was not presented with the issue and hence did not undertake to measure the case against the equitable doctrine concerning forfeitures to which we have referred. Nor need we do so or consider whether to remand the case to that end. The reason is that we are satisfied the dispossess statute itself requires a reversal of the judgment.

As we have said, *N. J. S. 2A*:18–55 provides the proceeding shall stop if the tenant pays the rent and accrued costs on or before final judgment. The statute thus adopts an approach somewhat akin to the equitable doctrine relieving from forfeiture for non-payment of a monetary obligation. Expressed another way, the summary proceeding is designed to secure performance of the rental obligation, and hence, it having been performed, the summary remedy may not be further pursued.

The breach-of-covenant clause, "c(4)" of *N. J. S. 2A*:18–53, was added by *L.* 1920, *c.* 260, § 1. The statement annexed to the bill sheds no light upon the question

whether the philosophy that payment of rent on or before final judgment shall end the action applies as well to other covenants for the payment of money. On the face of things, it would be incongruous to preserve the tenant's right to possession upon payment of "rent" and to evict him despite payment of some other and perhaps minor sum of money.

At any rate, we believe the word "rent" embraces the obligation to pay the sewerage charge. Businessmen deal in gross rent and net rent. In the former, the landlord receives a sum from which he pays sundry expenses or charges incidental to the ownership and enjoyment of real property. In the case of net rent, the lease casts the risk of fluctuation in those charges upon the tenant. Sometimes the tenant's obligation to pay further moneys is expressly denominated "additional rent." But in using the word "rent" the Legislature could scarcely have intended its statute to depend upon the characterization the parties agreed upon. Although there is discord within the cases, there is much authority that a tenant's promise to pay taxes may constitute "rent" within the meaning of a given statute. See *Spinning v. Spinning,* 41 *N. J. Eq.* 427 (*Ch.* 1886), affirmed, 43 *N. J. Eq.* 215 (*E. & A.* 1887); *Woods v. William A. White & Sons,* 172 *F. 2d* 356 (2 *Cir.* 1949); *Woods v. Callahan,* 172 *F. 2d* 179 (1 *Cir.* 1948); *In re Bonwit, Lennon & Co.,* 36 *F. Supp.* 97 (*D. C. D. Md.* 1940); *W. T. Grant Co. v. McLaughlin,* 129 *Conn.* 663, 30 *A. 2d* 921 (*Sup. Ct. Err.* 1943); *Perrin & Smith Printing Co. v. Cook Hotel & Excursion Co.,* 118 *Mo. App.* 44, 93 *S. W.* 337 (*St. Louis Ct. App.* 1906); *In re O'Flyn's Will,* 120 *N. Y. S. 2d* 732 (*Surr. Ct., Kings Co.* 1953); 52 *C. J. S. Landlord and Tenant* § 463, pp. 203–204; 1 *Tiffany, Landlord and Tenant* § 143 b, *p.* 844; § 169 h, *p.* 1024. This should be so when the sense of the situation makes irrelevant a distinction between a gross payment of rent and a net payment with a further obligation to pay taxes. The distinction would be foreign to the purpose of the dispossess statute.

Here we are dealing with a sewerage charge for which the owner of the real property is liable in any event, *L.* 1946, *c.* 138, § 8(a); *N. J. S. A.* 40:14A–8, and which constitutes a lien on his property on parity with the lien of municipal taxes, *L.* 1946, *c.* 138, § 21; *N. J. S. A.* 40:14A–21(b). If the landlord had exacted a gross rental out of which he absorbed that obligation, subsection "b" of the dispossess statute would surely include the full rental obligation. We think it makes no difference that here the parties left the varying burden of the amount of the charge with the tenant. That obligation constitutes "rent" within the purpose of the dispossess statute, and, it having been paid before suit, the tenant could not be evicted under that statute because of the default in payment.

The judgment is accordingly reversed. Since other allegations of the complaint apparently remain undetermined, the matter is remanded to the county district court for further proceedings not inconsistent with this opinion.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.