998

## In re COPPING'S ESTATE.

District Court, S. D. Texas, at Houston.
January 2, 1929.

No. 1320.

Thos. B. Blanchard, of Houston, Tex., for trustee.

Henry J. Dannenbaum, of Houston, Tex., for creditors.

HUTCHESON, District Judge. This is a petition to review the finding of the referee denying the claim of the landlord that the statutory lien for rent protects him, not only in the payment of the moneys stipulated in the lease as rent eo nomine, but the taxes and insurance premiums against the property which the lessee had also agreed to pay.

The point is not free from doubt; in fact, is left by the authorities in great confusion, with the weight of authority perhaps preponderating in favor of the referee's holding.

In view of the fact, however, that the holdings denying that tax and insurance payments should be regarded as rent were made in cases where, under the peculiar circumstances of most of them, it would have produced a harsh result to bring the tax and insurance payments within the term, and in view of the further fact that there is no holding either in this circuit or the state of Texas upon the precise point, it seems to me that the matter should be viewed by this court as res integra, and should be determined upon broader considerations than those which dictated the decisions in the cases mentioned.

The authorities are uniform that taxes and insurance may be stipulated as rent. Their differences appear in the widely differing conclusions reached by the courts in construing rental contracts which do not expressly stipulate for rent as to whether the terms used may be construed as impliedly so stipulating.

In this case the referee found that the covenants of the lease with reference to the payment by the bankrupt of taxes and insurance premiums are separate from, and independent of, the covenant to pay rent, and that the sums due and owing for taxes and insurance premiums were not reserved in the lease contract as rents, and did not constitute rents. The terms of the written lease bearing upon this controversy are as follows:

Third paragraph: "As rent for the premises herein demised, Lessee agrees and obligates himself to pay to the Lessors, their heirs, executors, administrators or assigns, the total sum of Eighteen Thousand Dollars ($18,000.00) to be paid in the following manner, to wit: For the first two years of this lease, beginning with May 1, 1927, and ending April Thirtieth, 1929, the monthly installments shall be Two Hundred and Fifty Dollars ($250.00)."

Fourth paragraph: "Lessee further agrees to carry fire and storm insurance on the improvements now located or constructed during the period of this lease on the demised premises, in reliable insurance companies approved by the Lessors, with the loss clause payable to the Lessors as owners thereof, for the full value of said improvements, or so much thereof as can be obtained, Lessee to pay the premium thereof as the same becomes due * * * and further agrees to pay, as the same shall become due, all taxes and assessments of whatsoever character, assessed and levied or either, against the above described real estate and improvements thereon * * * and to deliver as received to the Lessors proper receipts, for such taxes and assessments."

Tenth paragraph: "To secure the performance of this lease by the Lessee and those claiming under him, including the payment of rent for the entire contract period, all taxes and insurance premiums as they accrue, or other assessments as herein provided, an express contract lien is hereby created and given by Lessee to the Lessors on all property of the Lessee. * * *"

Twelfth paragraph: "Said Lessee shall pay to the Lessors, or to their agents, the specified rent at the time and the manner above provided and shall pay all taxes and other assessments and all insurance premiums, as they accrue, and in case of the non-fulfillment of these conditions and all others herein provided * * * the said Lessors shall have the right to enter the same. * * *"

Thirteenth paragraph: "In the case of default in the payment of the rents as they accrue, or in the payment of taxes and other assessments against said premises before they become delinquent, or the payment of all insurance premiums as they accrue, or default in any of the aforesaid covenants, the Lessors may enforce the performance thereof in any mode provided by law. * * *"

The position of the claimant is that, while it is true that the taxes and insurance premiums are not in terms stipulated as rent, they are stipulated as part of the consideration for the renting of the property, and must in law be regarded as rent, however called, because they spring to the landlord from no other source than return for the leasing of the property.

The position of the trustee in support of the referee's finding is that the statute giving a lien for rents must be construed as confined to that which is stipulated as rent, and may not be extended to that which is the equivalent of rent. Upon this narrow difference of rent eo nomine and rent by equivalence the case will turn.

One line of authorities, of which Guild v. Sampson, 232 Mass. 509, 122 N. E. 712, is typical, declares:

"While undoubtedly 'rent' may be so construed in a written lease as to include taxes, costs of improvements and other payments to be made by the lessee, still such an interpretation is not to be adopted in the absence of a clear intention of the parties to that effect expressed in the lease"—citing other Massachusetts cases, whereas it is held in a Missouri case, Perrin & Smith Printing Co. v. Hotel & Excursion Co., 118 Mo. App. 44, 93 S. W. 337, that the burden is upon him who denies it to establish that taxes agreed in the lease to be paid as part of the consideration for the lease, is not rent, the Court in that case saying:

"What motive did the Hotel Company have for agreeing to pay those taxes if the payment was not regarded as rent? The payment was certainly part of the consideration to be rendered for the use of the premises, and issued out of the land. The taxes were intended to be rent and ought to be treated as such in this case, even if they lacked some technical element of rent; for instance that they were payable to the State instead of the landlord."

Other cases supporting the position of the landlord are Britton v. Western Iowa Co. (C. C. A.) 9 F.(2d) 488, 45 A. L. R. 711; Neagle v. Kelly, 146 Ill. 460, 34 N. E. 947; Roberts v. Sims, 64 Miss. 597, 2 So. 72; Quinby Co. v. Sheffield, 84 Conn. 177, 79 A. 179; Woolsey v. Abbett, 65 N. J. Law, 253, 48 A. 949.

Whatever may be the view which the courts of other states take toward the statutes of those states fixing landlords' liens, that lien has ever been a favorite of the courts of this state, and all persons dealing with tenants are charged with knowledge of the rights of the landlord in the premises which are to protect against the lienable goods of the tenant the payment to him of the consideration for which he leases the premises.

To hold in a case of this kind that the landlord would be protected in the payment to him as rent of a sum of money stipulated as such eo nomine, but not to the same sum of money stipulated to be paid by the tenant as consideration for the same premises, because, forsooth, part of it was called rent and the balance was given the name of the obligation which the landlord owed and for the indemnity of himself from the payment of which he had obligated the tenant, would be a sticking in the bark. The lien of the landlord being founded upon the broadest kind of policy to protect the landlord in the payment to him for the fruits and revenues issuing from the leasing of his property, the courts ought not to refine his substantial rights away by giving effect to form, and denying it to substance.

I am of the opinion, and will so hold, that the referee's finding is erroneous, and that the consideration to be paid by the tenant, though described in the lease as the payment of taxes and insurance premiums, is in fact reserved, and should be protected as rent.