830

## In re ROSENSTOCK et al.
### No. 6980.

District Court, D. Maryland.
Nov. 21, 1932.

Jacob S. New, of Baltimore, Md., for petitioner.

Nathan Hamburger (of Rome & Rome), of Baltimore, Md., for respondent.

CHESNUT, District Judge.

The petition to review the referee's findings and conclusions in this matter raises quite an important question as to the rights of landlords as claimants for priority payment of taxes as rent in bankruptcy cases. In the instant case the landlord is the Lerner Stores Corporation, which subleased for five years the premises No. 309 W. Lexington street, Baltimore, Md., to one Abraham Rosenstock, the latter now in bankruptcy. On the 23d of July, 1932, the landlord issued a distraint claiming $6,168.45 for accrued and unpaid *taxes* and water rent, and minor privilege tax for the years 1931 and 1932, and levied the distraint on the property of the bankrupt located on the premises. No claim for other rental was included in the distraint. A watchman was left in charge of the property levied on under the distraint proceeding, and was in attendance at the time of the adjudication in bankruptcy of the tenant on July 29, 1932. The petition for priority of payment of the amount claimed to be due in the distraint proceeding having been filed and answered and opposed by the trustee in bankruptcy, the issue was referred to Referee Myers for hearing and report of findings and conclusions. The referee's written opinion and report was filed October 8, 1932, and has been brought before the Court on petition for review. The referee, in a careful and admirably clear opinion, held (a) that, under the terms of the lease in this case, taxes and kindred charges in the landlord's claim were specified to be a part of the rental to be paid; (b) that the landlord, therefore, had the right to distrain for such taxes, although no other rental was due and unpaid; (c) that the distraint proceedings as actually conducted were valid and enforceable; and (d) that under section 64b (7) of the Bankruptcy Act, as amended by the Act of May 27, 1926, § 15, 11 USCA § 104 (b) (7), the landlord was entitled to priority payment for his claim as made in the distraint proceeding.

After hearing counsel and further study of the papers and the applicable law, I have reached the conclusion that the landlord's claim is not entitled to priority of payment, because, in my opinion, the lease in this case, when properly construed, excludes the right of the landlord to distrain for taxes, even though they are elsewhere in the lease described as a part of the total rental.

In all other respects, save in the matter of the construction of the lease, I agree fully with the referee's findings and conclusions. But, as the landlord's claim to priority is necessarily dependent upon the validity of the distraint for the unpaid taxes, and as I find that by the proper construction of the lease this right was not given, it necessarily follows that the referee's report must be vacated and set aside and the landlord's claim held disentitled to priority payment.

As the subject-matter is one of importance to landlords in Baltimore city, I will briefly state my reasons for the conclusion reached.

The landlord's claim to priority of payment, to be sustainable, must come within the scope of the Bankruptcy Act, § 64b (7), which gives priority to payment of "debts owing to any person who by the laws of the States or the United States is entitled to priority."

In Maryland it has been held by Judge Morris and by Judge Rose successively that

the landlord's claim for rent does not have priority, unless distraint proceedings have in fact been brought prior to the bankruptcy. In re Southern Company (D. C.) 180 F. 838; In re Chaudron & Peyton (D. C.) 180 F. 841. Compare In re Mt. Winans Lumber Company (D. C. Md.) 228 F. 831, and Mears v. Perine, 156 Md. 56, 143 A. 591, 62 A. L. R. 1100. See, also, Judge Coleman's opinion In re Caplan (D. C.) 23 F.(2d) 680. In other states the rule is different. For instance, for the law of Virginia, see Bradford v. Graham, 287 F. 686 (C. C. A. 4); Grant Co. v. Snead, 37 F.(2d) 705 (C. C. A. 4). This condition was complied with by the landlord in this case.

Whether the debt in this case is entitled to priority of payment depends on the local law of the state of Maryland. Longstreth v. Pennock, 20 Wall. 575, 22 L. Ed. 451; Henderson v. Mayer, 225 U. S. 631, 32 S. Ct. 699, 56 L. Ed. 1233. There seems to be no decision of the Court of Appeals of Maryland on the point as to whether taxes expressed to be payable as rent can be enforced by distraint, although it was said by Judge Stockbridge in Feldmeyer v. Werntz, 119 Md. 285, 289, 86 A. 986, that, in a lease of a second story of a building without requirement of the payment of rent as such, a covenant on the part of the lessee to pay the taxes was equivalent to an agreement to pay rent. And in Maryland Theatrical Corp. v. Manayunk Trust Co., 157 Md. 602, 618, 146 A. 805, it was held that taxes payable as rental must be included in the amount of rentals received for the purpose of capitalization of the rent for redemption under the local statutes.

In a number of federal decisions in bankruptcy, applying the laws of other states on this subject, it has been held that, where the tenant agrees to pay taxes and similar charges, classed as rent eo nomine, the landlord has the right to priority of payment for unpaid taxes. McCann v. Evans (C. C. A. 3) 185 F. 93, and Bennett's Estate v. Sproul, 42 F.(2d) 33 (C. C. A. 3), both applying the Pennsylvania law. Compare In re Family Laundry Co. (D. C. Pa.) 193 F. 297. And in a few cases the same right has been upheld where the tenant has agreed to pay taxes, although not as rent eo nomine. In re Copping's Estate (D. C. Tex.) 29 F.(2d) 998; Britton v. Western Iowa Co. (C. C. A. 8) 9 F.(2d) 488, 491, 45 A. L. R. 711; In re Spies-Alper Co. (D. C. N. J.) 231 F. 535. Other decisions holding in effect that the tenant's agreement to pay taxes may be treated as rent and a proper basis for distraint proceedings are considered in Tiffany on Landlord and Tenant, vol. 1, § 143, pages 843, 844; and section 169, subsection (h), page 1024; although this learned and careful author submits the personal view that the propriety of so holding may well be doubted. He says (pages 1024, 1025): "The fact that the parties intend that payments thus agreed to be made by the tenant on account of taxes shall be regarded as payments of rent cannot, it is conceived, have any effect in this regard. The question of what constitutes rent is one of law, not of intention."

And in volume 2, section 327, subsection 8, page 2004, the same author says: "Even though particular sums named in the lease to be paid by the lessee to the lessor are not, properly speaking, rent, the lease may, it seems, by express provision, give a right of distress therefor, such a provision being in effect the grant of a license or power to seize the chattels belonging to the grantor. Such an express stipulation cannot enable the landlord to seize the property of a person other than the original lessee, since the latter has control of his own property only, and it cannot, it seems, be effective for the purpose of authorizing a statutory distress as distinguished from the seizure by the landlord allowed by the common law."

Looking at the nature of the distraint proceeding at common law and the practice thereunder which in substance still prevails to this day in Maryland, somewhat modified but not essentially changed by statute, it would seem very doubtful indeed whether the landlord and tenant by an unrecorded lease could validly subject goods on the leased premises to distraint for obligations, monetary or otherwise, due from the tenant to the landlord, not directly springing from and related to the leased property. However, we are not concerned in this case with such collateral obligations of the tenant as a subject of distress. And I see no reasonable objection to a holding that taxes on the property, when covenanted to be paid by the tenant *as rent*, can be made the basis of a distraint. It is well known that in Baltimore city in recent years many leases of business property have contained covenants on the part of the tenant to pay taxes and other expenses on the property in addition to a net yearly rent which will produce a clear income of a definite and certain amount over and above all expenses to the landlord. Such other expenses, including taxes, insurance premiums, water rent, etc., may vary from year to year, and, where the property is used for business purposes, it may be reasonably considered that the tenant is better able to adjust his

affairs to the payment of these uncertain and varying amounts than the landlord. The alternative would be for the landlord to fix a certain gross sum to be paid by the tenant, from which the landlord would pay the uncertain and varying expenses. It is obvious that the expenses on the property and the net return to the landlord must both come from the rental to be paid by the tenant. Whether the latter sum is a gross sum from which the landlord pays the expenses, or a net sum to the landlord with the payment of the expenses by the tenant, would seem to be unimportant, from any legal or economic aspect. I see nothing, therefore, contrary to a sound public policy in permitting the landlord to have his remedy by distraint for any and all expenses related to the property, which the tenant has agreed to pay, at least if it is made clear from the lease that they are to be paid as rental. And, as there seems to be no Maryland statute or decision to the contrary, and as many cases have approved and enforced the remedy of distraint for unpaid taxes under similar circumstances, I think it may be taken as the proper rule to apply in this district in bankruptcy cases.

■ But, assuming that the landlord and tenant can validly agree for the remedy of distraint for unpaid taxes, the ultimate question in this case is whether they have in fact so agreed. To answer this question requires a careful analysis of the lease. In this connection it should be borne in mind that, while the right of distraint for unpaid rent as given by the common law (and derived from feudal origins) and regulated in procedure by the Statute of 2 William and Mary, c. 5 (in force in Maryland) (passed in 1690) is not dependent for its exercise upon an express agreement in the lease between landlord and tenant, nevertheless it is generally recognized that the parties by agreement can restrict the exercise of the right and, within certain limits at least, enlarge the right by contract. See 36 C. J. § 1578, pp. 535, 536. It is said in Tiffany on Landlord and Tenant, § 329 (c), p. 2031: "The right of distress may, it seems, be excluded by an express release of such right on the part of the landlord, or a provision to that effect in the lease."

A familiar restriction of the right in Maryland leases gives the landlord the power to distrain only in the event the rent due is in default for a certain period of time, as, for instance, ten days.

■ I come now to a consideration of the particular lease to ascertain whether it was the intention of the parties that the landlord should have the right to distrain for unpaid taxes.

The lease is dated June 17, 1930, and is for the term of five years, covering the store and business property 309 W. Lexington street. It is an elaborate document of eight typewritten pages which gives evidence of careful preparation, and includes much more than the simple lease of one printed page customary in Baltimore city. The instrument, after describing the property, states that the tenant is to pay unto the landlord the yearly rent on the property as follows: "During the first year of said term $7,500 payable in equal monthly instalments *in advance*, the first of which will fall due in advance on the 15th day of July in the year 1930."

For the succeeding years the rental is described in the same way, but increases or "steps up" in successive years to $9,500 in the last year.

The words "net yearly rental" are defined to be free and clear of all costs and expenses on the property for taxes, water rents, and other charges of every kind and character, including insurance and expenses for repairs and restoration in the event of destruction.

The tenant covenants (1) to pay the net yearly rental "no matter what may happen to the said building"; (2) to make repairs, including restoration in case of partial or total destruction from any cause whatever; (3) to pay all taxes, "including special paving taxes or assessments, minor privilege taxes and benefit assessments and water rent" when and as the same shall become due and payable and demandable, "not including income, inheritance or transfer taxes"; (4) to pay premiums for fire and liability insurance policies.

The lease then provides as follows: "*And all of said costs and expenses and payments are hereby declared to be rent*, and no matter what may happen to the building or buildings on said property during said term of five (5) years, and said tenant hereby covenants with said landlord that during the whole of said term of five (5) years he will pay said costs and expenses and payments in addition to and exclusive of said net yearly rent or monetary rent hereinbefore agreed to be paid by said tenant." (Italics supplied.)

The lease then, in paragraph 8, provides as follows: "That if the said rent shall be thirty (30) days in arrears after written notice, or in the event of a breach by the tenant

of any of the clauses, stipulations and covenants of this lease, and such breach shall not be remedied within thirty (30) days after written notice by the landlord to the tenant of the specific breach, the said landlord at its option may re-enter and take possession of said premises and if it so desire, annul this lease, and upon leaving upon or affixing to the door of said premises five days' (5) notice in writing to quit, the said landlord shall be entitled to the benefit of all the provisions of the law for the speedy recovery of lands and tenements held over by tenants in the city of Baltimore, as provided in sections 844 to 964 inclusive, of the Charter of Public Laws of Baltimore City (1927) compiled by Horace E. Flack, and also to the benefit of any and all public general or public local laws relating to the' speedy recovery of the possession, of lands and tenements held over by the tenants in the City of Baltimore that are now in force or may hereafter be enacted; *or the said landlord in the event of the non-payment of the rent in advance at the time and in the manner hereinbefore set forth may, at their option, distrain therefor at any time."* (Italics supplied.)

The lease contains a number of additional covenants and agreements of the parties, including the express understanding that the particular lease is really a sublease of the property subject to an original lease from Hart and others to Lerner Stores Corporation dated December 13, 1928; but the provisions above outlined are all that bear upon the question under consideration.

Does this lease confer upon the landlord the power to distrain for the nonpayment of taxes? I reach the conclusion that it does not. It will be noted that the lease carefully distinguishes between two classes of rent, to wit: (a) Net yearly rental payable in equal monthly instalments *in advance,* and (b) certain other costs, expenses, and payments, the latter including taxes, to be made by the tenant. The net yearly rental is specified to be paid *in advance.* The costs, expenses, and payments are to be made at varying times, and, of course, in varying amounts the taxes to be paid when "due and payable and demandable." Some of these costs and expenses are obviously of an uncertain amount, although possible of being rendered certain at some time. It is noted that taxes are put in this class by the lease. This class (b) of "costs, expenses and payments" are by the lease *declared to be rent* but the phrase "and all of said costs, expenses and payments are hereby declared to be rent" is not a sentence by itself, but is only the first phrase in a paragraph which proceeds as follows: "And no matter what may happen to the building or buildings on said property during said term of five (5) years, and said tenant hereby covenants with said landlord that during the whole of said term of five (5) years he will pay said costs and expenses in addition to and exclusive of said net yearly rent or monetary rent."

The implication here would seem to be that the draughtsman of the lease specifically declares these costs, payments, and expenses to be rent, so that they would certainly be legally payable by the tenant, even though the building was damaged or destroyed. It will be remembered that at common law a tenant was liable for rent, even though the premises were destroyed during the tenancy, and this rule has been abrogated in Maryland by statute in case of a "fire or other unavoidable accident," unless otherwise provided in the lease. See Maryland Code, art. 53, §§ 28, 30. In view of the collocation of the phrase declaring the costs, expenses, and payments to be rent, it is doubtful indeed if the draughtsman of the lease was there giving any thought to the incidental remedy of distraint for the recovery of the costs, expenses, and payments, including taxes.

But a more conclusive indication of the intention of the parties seems to me to be in paragraph 8 of the lease above quoted. There the draughtsman undertook to include quite comprehensively the landlord's remedies for breaches by the tenant. And here again he makes two classifications of remedies: (1) The provision for re-entry by the landlord in the event that "the said rent shall be thirty (30) days in arrears"; and (2) a provision for distraint immediately "in the event of the non-payment of the rent in advance." In my opinion, the force and effect of this alternative provision with regard to distraint is to restrict and limit the landlord's remedy of distraint to the nonpayment of that class of rent which alone by the lease is payable in advance; that is, to the net yearly monetary rent. While I think it would be true that, if this last clause had not been included, the remedy for distress would have attached to the obligation to pay taxes, in view of their inclusion as rent eo nomine, nevertheless it seems to me that the definite distinction between the two kinds of rent with the limitation of the exercise of the right of distress to the one kind alone necessarily excludes any intention of the parties that the right of distraint should also apply to the other.

It was stated by counsel during the argument that, since the filing of the referee's report, the landlord had itself gone into bankruptcy, and, while it had in fact paid the taxes for 1931, it had not in fact paid them for 1932, from which latter consideration it was suggested that there is even less merit in the claim for priority payment. But I deem these latter facts are purely accidental and in no way control the principle involved in the case.

Entertaining these views as to the proper construction of the lease, I shall be obliged to vacate the findings of the referee and sign an order declaring that the claim is not entitled to priority.