## IRVING TRUST CO. v. BURKE (two cases).
### Nos. 3445, 3471.

Circuit Court of Appeals, Fourth Circuit.

June 15, 1933.

Nathan Hamburger, of Baltimore, Md. (Morris A. Rome and Morris S. Snyder, both of Baltimore, Md., on the brief), for appellant.

Jacob S. New, of Baltimore, Md., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

In the bankruptcy proceedings of Abraham Rosenstock and Abraham Rosenstock, Inc., the validity of a distraint on the stock of goods situate on premises leased by Rosenstock was questioned. The distraint had been issued by reason of his failure, as tenant of the premises, to pay taxes thereon in accordance with the covenants of the lease, and it was held by the District Court, in an opinion reported as In re Rosenstock, 1 F. Supp. 830, that the distraint was unauthorized under the terms of the lease.

Lerner Stores Corporation subleased the premises known as No. 309 West Lexington street, Baltimore, Md., to Abraham Rosenstock by written lease dated June 17, 1930, for a term of five years beginning July 15, 1930, at a specified yearly rent of $7,500 for the first year, which was increased by successive additions of the sum of $500 in each subsequent year. The tenant covenanted not only that he would pay the specified monetary rental in equal monthly installments in advance, but also that he would, at his own expense, keep the building in repair and restore it in case of partial or total destruction from any cause, and that he would take out and carry for the benefit of the landlord fire insurance in an amount equal to the insurable value of the building on the premises, and would pay all taxes and assessments of every kind levied against the property during the term of the lease, when the same should become due and demandable. All of said costs and expenses were expressly declared to be rent, and the tenant covenanted to pay them no matter what might happen to the building on the premises during the term.

The following provision was made with reference to the rights and remedies of the landlord in the event of a breach by the tenant of the covenants of the lease: "8. That if the said rent shall be thirty days in arrears after written notice, or in the event of a breach by the tenant of any of the clauses, stipulations and covenants of this lease, and such breach shall not be remedied within thirty days after written notice by the landlord to the tenant of the specific breach, the said landlord at its option may re-enter and take possession of said premises and if it so desires, annul this lease; " * * or the said landlord in the event of the non-payment of the rent in advance at the time and in the manner hereinbefore set forth, may, at their option, distrain therefor at any time."

The tenant paid the monetary rent, but failed to pay the sums due for taxes, water rents, and minor privilege taxes for the years 1931 and 1932, and hence the landlord on July 23, 1932, caused a distraint to be issued and levied upon the tenant's stock of goods on the leased premises. The constable making the levy prepared an inventory of the goods seized which is hereinafter described, and served it with a notice of the distraint upon the tenant. In the meantime, the business conducted by Abraham Rosenstock had been taken over by Abraham Rosenstock, Inc., which was incorporated in June, 1932, and the leased premises were occupied by the new corporation under the active management of Abraham Rosenstock, its president. The corporation and the president, as an individual, were adjudicated bankrupts on July 29, 1932, and at that time the constable was in possession of the premises and of the stock of goods under the distraint.

In this situation, Lerner Stores, Inc., filed a petition in the bankruptcy proceedings, praying that it be allowed the amount of its claim and the costs of distraint, in the aggregate sum of $6,438.40, as a preferred claim upon the assets of the bankrupt estate; and it seems that the goods were sold by the receivers in bankruptcy subject to this claim. Lerner Stores Corporation has since been adjudicated a bankrupt, and the case has proceeded by the substitution of the Irving Trust Company, trustee in bankruptcy in place and stead of the corporation. The representatives of the bankrupt estate of Abraham Rosenstock and Abraham Rosenstock, Inc., resisted the landlord's petition on several grounds, as follows: (1) That the law of Maryland does not authorize a distraint for taxes only; (2) that the inventory of the merchandise levied upon was too general in its terms to support a valid distraint; and (3) that, under the terms and provisions of the lease, the right to distrain for taxes was specifically denied.

The more important questions in this case, in so far as the application of the law of landlord and tenant to property in Maryland is concerned, are: (1) The priority of the landlord's claim for rent when distraint proceedings have been brought prior to bankruptcy; and (2) the right of the landlord to enforce by distraint the payment of taxes by the tenant, in accordance with a covenant in the lease, when that document expressly provides eo nomine that taxes and similar charges shall be classed as rent. The District Court decided the first of these questions in accordance with the settled rule in Maryland that a landlord has a prior claim upon the proceeds of sale of the tenant's goods situated upon the leased premises, in satisfac-

tion of rent due and unpaid, provided that a distraint has been levied thereon prior to the filing of the petition in bankruptcy and the levy has been retained until that time; because, under such circumstances, the landlord has acquired a lien on the goods under the law prevailing in that state. In re Southern Co. (D. C.) 180 F. 838; In re Chaudron & Peyton (D. C.) 180 F. 841; In re Mt. Winans Lumber Co. (D. C.) 228 F. 831; In re Schapiro (D. C.) 286 F. 620; Bradford v. Graham (C. C. A.) 287 F. 686.

On the second question, it was held in the District Court that taxes on property in Maryland may be made the basis of a distraint when the tenant covenants to pay them as rent, and fails to do so. We are in accord with this ruling for the reasons given by the District Judge. The rental named in a lease is usually fixed at a figure sufficiently high to cover the taxes and other expenses upon the property, and to insure a return to the landlord upon his investment. But sometimes, especially when a lease for a term of years is desired, a consideration only of prevailing conditions will not suffice, and the landlord cannot be assured of an adequate net revenue unless the tenant promises to pay the increased expenses which may result from an increased valuation of the property or a higher rate of taxation. So it has become the practice in many places to require the tenant to pay as rent all or part of the taxes. The amount so named is none the less rent because it is measured by the expenses of the landlord, and it should therefore be entitled to the same protection as ordinary rent. There are no decisions in Maryland directly in point, although it was held in Feldmeyer v. Werntz, 119 Md. 285, 289, 86 A. 986, that a covenant on the part of the lessee to pay taxes, not specifically named as rent, was equivalent to an agreement to pay rent; and in Maryland Theatrical Corporation v. Manayunk Trust Co., 157 Md. 602, 618, 146 A. 805, that taxes payable by the tenant as rent should be included in the total rent for the purpose of capitalization of the rent for redemption under the Maryland statutes. In Pennsylvania and New Jersey, the right of distraint for taxes has been upheld where the tenant agrees to pay them as rent. McCann v. Evans (C. C. A.) 185 F. 93; Bennett's Estate v. Sproul (C. C. A.) 42 F.(2d) 33; In re Spies-Alper Co. (D. C.) 231 F. 535; see also East v. Clarke, 33 Ont. L. R. 624, 629. In a few cases the right has been upheld where the tenant has agreed to pay taxes in consideration of the use of the premises. Britton v. Western Iowa Co. (C. C. A.) 9

F.(2d) 488, 45 A. L. R. 711; In re Copping's Estate (D. C.) 29 F.(2d) 998. In other jurisdictions, it has been held that an agreement to pay taxes or other expenses of the property, although made in consideration of the use of the property, is not to be considered as an agreement to pay rent because such expenses are not payable to the owner of the property but to third parties, and hence the agreement to pay them lacks one of the ordinary characteristics of rent. Evans, Trustee, v. Lincoln Co., 204 Pa. 448, 54 A. 321; Garner v. Hannah, 13 N. Y. Super. Ct. (6 Duer) 262; People ex rel. Wilson v. Swayze, 15 Abb. Prac. (N. Y.) 432; Finch v. Gilroy, 16 Ont. App. R. 484; and see Tiffany on Landlord and Tenant (1910 Ed.) § 169 h, p. 1024. The rule of these cases, however, should not be applied in view of the foregoing discussion to the lease here involved, which expressly declares the costs, expenses, and payments to be paid by the tenant to be rent, and we therefore hold, in harmony with the conclusions of the District Court, that in Maryland a distraint will lie for the failure of the tenant to pay taxes which the tenant has agreed to pay as rent eo nomine.

Appellee also renews here the contention, overruled in the District Court, that the distraint was invalid as to the merchandise levied upon, for failure to comply with the statutory requirement of notice. The statute of 2 William and Mary, section 1, chapter 5, 2 Alexander's British Statutes (Coe's Edition) 774, in force in Maryland, by virtue of which the right to sell chattels distrained upon exists, provides simply in general terms that there must be notice of the distraint left on the premises; but it has been uniformly held that the notice required is a notice in writing which will apprise the tenant of the amount of rent in arrear and of the goods taken. Kerby v. Harding, 20 L. J. Exch. 163; 6 Exch. R. 233; Wakeman v. Lindsay, 14 Q. B. 625; 19 L. J. Q. B. 166; and see Cahill v. Lee, 55 Md. 319, 326. As shown by these cases, as well as by 2 Tiffany on Landlord and Tenant (1910 Ed.), § 342 B., p. 2062, and Thomas on Justice Procedure (1917 Ed.) § 181, it has been the practice in Maryland, as well as in England, to fulfill the requirement of notice of the goods taken by appending an inventory to the notice of distraint.

This practice was followed in the instant case, but it is claimed that the inventory did not describe the merchandise distrained upon with sufficient particularity.

The inventory, prepared on the premises by the constable, with the assistance of the bankrupt, after setting forth specifically fourteen items of fixtures, describes the merchandise as follows: "Contents of two show windows; 1 assorted lot of diamonds; 1 assorted lot of men's and women's watches; 1 assorted lot of children's, men's and ladies' watches, 1 assorted lot of novelty jewelry; and all other goods and chattels of every description now on the premises." The appellee expressly admits, on the other hand, that the bankrupt kept for its own purposes a perpetual inventory of its stock of merchandise, and that the constable explained that the distraint was levied on everything in the place, so that there is no doubt that the bankrupt had actual knowledge both of the extent of the levy and of the number and nature of the specific articles intended to be embraced in it. Furthermore, nothing was removed from the premises by the constable, and a watchman was placed in charge pending the sale.

Two cases, Wakeman v. Lindsay, supra, and Kerby v. Harding, supra, are mainly urged in support of the contention that the inventory was insufficient. An examination of those cases discloses, however, that the objectionable features of the inventories there involved are not present in the case at bar. In Wakeman v. Lindsay, the inventory specified only "one clock and weights, etc., etc., and any other goods and effects that may be found in and about the premises to pay the said rent and expenses of this distress," and this was held sufficient. It is true that all of the judges cautioned against the use of such a general form of notice, and it was said to have been held sufficient "with great reluctance"; but the principal difficulty in the minds of the court seems to have been that the use of such words "as may be found" and "in and about," which do not appear in the present case, left it uncertain whether the distraint was intended to cover all the goods on the premises, or some greater or less quantity; and it was agreed that an inventory which in terms covered all the goods on the premises was valid. In Kerby v. Harding, the inventory, after describing certain horses and carriages, without specific reference to the plaintiff's pony, concluded: "and all other goods, chattels and effects on the said premises that may be required to satisfy the above rent, together with the expenses." These words were held too uncertain to include any chattels not specifically set forth, for, as the court says, the inventory "does not impound all the goods on the premises, but only impounds all the goods, chattels and effects that may be required in order to satisfy the above rent." There is no such uncertainty in the inventory now under consideration.

It must be borne in mind that the purpose of the requirement of notice of the goods taken is to afford the tenant an opportunity to replevy them, and that a minute description of the goods is of importance to the tenant for this purpose only where, as was more often the case at the time the statute of 2 William and Mary was adopted than at present, the goods are removed from the premises and impounded. Where, as in the present case, the goods are left on the premises, there is no difficulty of identification, and the tenant does not need this protection. All that is required in such a situation is, as stated in Hunter on Distress, (9th Ed.) p. 76, that: "An inventory should be sufficiently specific to enable the tenant or owner of the goods to know what is intended to be seized. It need not, however, be as minute as a specification."

In Richards v. McGrath, 100 Pa. 389, 399, which is precisely in point, the holding of the court is aptly expressed by the following quotation: "A landlord is not required to weigh or measure all the goods in a store which he has distrained, and give a full and complete inventory of every pound of such as are usually sold by weight and of every yard or quart of such as are usually sold by measure; nor need he detail every article or notion in a stock of millinery goods. The inventory should be so full and complete as to inform the tenant of the goods distrained and for which he may issue a writ in replevin."

There is another reason, independent of the sufficiency of the inventory, which supports the validity of the distraint. It is clear that no notice to the tenant was required in order to perfect a possessory lien by distraint at common law. The requirement of notice was simply a prerequisite to the right of sale given by the Statute of 2 William and Mary, a right which the landlord did not have at common law. The validity of the landlord's lien upon distraint, even in absence of notice, is established in Keller v. Weber, 27 Md. 660. The court says, at page 666 of 27 Md.: "The notice is a preliminary to the sale, not to the distress, on the regularity of which, the right of possession of the goods depends. If they were legally distrained, a subsequent irregularity might subject the landlord to an action, but does not deprive him of his lien on the prop-

erty distrained. 11 Geo. II, ch. 19, sec. 19; Smith's Landlord and Tenant, 180, 181, in mar. The English authorities are clear that a want of notice does not render the distress invalid. Trent v. Hunt, 9 Exch. 14; Tancred v. Leyland, 16 Adolph. & Ellis, N. S., 669. * * * Independently of authority, we should reach the same conclusion upon principle." See, also, Calvert Bldg. & Cons. Co. v. Winakur, 154 Md. 519, 531, 141 A. 355. A similar case is McKinney v. Reader, 6 Watts (Pa.) 34; and see 2 Tiffany on Landlord and Tenant (1910 Ed.) § 342 b. p. 2062. Since there is no question of sale pursuant to the distraint in this case, it follows that appellant had perfected a valid lien under the state law, irrespective of the sufficiency of the inventory, and is therefore entitled to a prior claim against the proceeds of the property on the demised premises.

The remaining question relates to the contention that, irrespective of the general right of a landlord to issue a distraint for the breach by a tenant of a covenant to pay taxes, the present lease manifests an intention that the landlord shall not have that right in this instance. The lease was so interpreted in the District Court. It describes the sum of money to be paid by the tenant to the landlord annually in equal monthly installments in advance as "net yearly rent," distinguishing it from the costs and expenses for repairs, taxes, and insurance which the tenant also agrees to pay. And the lease then provides in paragraph 8, quoted above, two remedies in case of a breach, namely: (1) If the rent shall be in arrear for thirty days, or in the event of a breach by the tenant of any stipulation of the lease not remedied within thirty days after written notice, the landlord may re-enter, or, if he so desires, annul the lease; and (2) in the event of nonpayment of rent in advance, the landlord may, at his option, distrain therefor at any time. Two kinds of rent are thus described, one of which is payable in fixed monthly installments in advance, and the other at varying times, and in varying amounts; and the remedy of distraint is mentioned only in connection with the failure of the tenant to pay one kind of rent. Therefore it was concluded that the parties intended that the remedy of distraint

should not be available if the tenant should fail to make the payments constituting the other kind of rent. It is said that these other payments are declared by the lease to be rent, so as to make certain that they would be paid even if the building on the premises be damaged or destroyed, thus taking advantage of the provisions of article 53, §§ 28 and 30, of the Maryland Code, whereby the common-law rule that the tenant was liable for rent, even though the premises should be destroyed during the term, was abrogated, unless otherwise provided in the lease.

There is force in this contention, but we have concluded that it is not in harmony with the true intent of the lease, when all of its provisions are taken into consideration. They show most conclusively that the tenant agreed to assume a number of obligations which otherwise the landlord would have been required to perform, and that the expenses involved constituted a large part of the total rent. The purpose to protect the landlord in all contingencies that might arise is manifest, and it does not seem reasonable to suppose that the parties regarded the obligation to pay one kind of rent less important than the other. It was not necessary to specify the remedy of distraint in the lease in order to make it available in case of default in paying either species of rent, and it is difficult to conclude that its insertion in the lease, with reference to the rent payable in advance, was intended to curtail the landlord's rights. Especially does this appear from the fact that the clause is found in the very paragraph inserted in the lease to increase the landlord's security. While we recognize that the opposing view is not without a logical basis, we conclude that it was not the intent of the parties to deny the remedy of distraint in the event of the failure of the tenant to pay the taxes and other expenses in conformity with the covenants in the lease.

This case being here properly on an appeal, the appeal to superintend and revise will be dismissed, and the decree appealed from will be reversed.

No. 3471 reversed.

No. 3445 dismissed.