## In re CORTESE.

### No. 734.

District Court, N. D. Texas, San Angelo Division.

Dec. 17, 1937.

Anderson & Jones, of San Angelo, Tex., for review.

J. L. Mays, of San Angelo, Tex., for trustee.

ATWELL, District Judge.

Cortese, the bankrupt, made a written lease with two creditors, who were joint owners of a building, in which he agreed to pay rent at $30 per month to each, in advance. Additional covenants bound him not to commit waste, to comply with city ordinances, not to assign or sublet; to pay the water tax; and a provision relating to the repair of the premises in case of fire. The lease also provided: "That no improvements or alterations shall be made in or to the premises without the consent of the lessor in writing." Attached to the form printed lease is a typewritten paragraph in the following words: "It is understood that the lessee may, at his own expense, remove the partition between the space herein demised and the adjoining building, * * *, with the expressed agreement that he will rebuild said petition and refinish both sides at the termination of this lease, so that said petition will be replaced in all respects in its present condition, without any expense whatever to the lessor. It is understood that in removing said partition, that at least six columns properly spaced, sufficient to hold the roof of this and the adjoining space * * * so that it will not be permitted to sag in any event. The said lessee to do all necessary bracing of said roof and the ceiling joists or rafters, with cross braces, if necessary, supporting said rafters or joists, from one column to another."

Lowrie owned on one side of the partition and Russell owned on the other side. The lease from each was identical. The lease was made on May 18, 1932, and took effect on the 15th of July of that year, and ended on the 15th of July, 1933. It provided that the building was "to be occupied as a grocery store and meat market and accessories, and not otherwise, paying therefor the sum of $360.00, payable $30.00, July 15, 1932, and $30.00 on the 15th day of each succeeding month thereafter."

The bankrupt occupied the building for that year, and at the end of the term, by parol, the lease was extended on a month to month basis at the same figure, and subject to the terms thereof. At the time of bankruptcy all rent had been paid and the building was surrendered. During the oc-

cupancy the bankrupt had exercised his privilege under the written permission to remove the partition wall, and at the time the building was surrendered to the owner by the trustee it is agreed that the cost of replacing the wall would be $240. For this sum the creditor files a claim and asks a lien under the state statute which provides, in article 5238, Vernon's Texas Civil Statutes 1936, that "all persons leasing or renting any residence, storehouse or other building, shall have a preference lien upon all property of the tenant * * * in such * * * building, for the payment of rents due and to become due."

The creditor claims that the question is ruled by In re Copping's Estate, D.C., 29 F.2d 998. The referee did not think so, and allowed the claim but denied the lien.

Ruling Case Law, vol. 16, p. 987, § 502, seems to state the general rule, which is: "Under a statute giving a lien for rent, the landlord cannot assert a lien for other indebtedness than that arising from the leasing of the premises. In order to have a lien for rent, he must show that his claim is for rent; and if he so blends his rent account with other items, that the two cannot be segregated his lien is lost. So the landlord cannot, it seems, claim a lien on account of unpaid taxes which the tenant covenanted to pay, and a fortiori, for damages, for breach of the general covenants of the lease."

The Copping case, supra, is cited in Tex.Jur. vol. 27, p. 143, as authority for the support of this statement: "The lien protects the landlord, not only as to obligations to pay sums which have been stipulated to be paid as rent eo nomine, but also as to engagements to pay sums which otherwise constitute the consideration for the right to occupy the premises—e. g.—the obligations to pay the taxes on the property or premiums of insurance thereon."

An examination of the Copping case shows that the payment of the rent was specifically provided for in lump sum and by monthly installments, but also that the lessee further agreed to pay, as the same became due, all taxes and assessments of whatever character assessed or levied against the property, and to deliver proper receipts therefor to the lessor. And in a succeeding paragraph was this language: "To secure the performance of this lease by the Lessee and those claiming under him, including the payment of rent for the entire contract period, all taxes and insurance premiums as they accrue, or other assessments as herein provided, an express contract lien is hereby created and given by Lessee to the Lessors on all property of the Lessee."

That is quite different from the contract that the parties made here. The lessee was merely given permission, at his own expense, to remove the partition. If he exercised such an option, then he bound himself to rebuild the partition. There is no attempt in the written contract or in its parol extension to assert any lien whatever for the expense of replacing the partition in the event the bankrupt neglected to do as he agreed with reference thereto.

In many cases cited by Corpus Juris, in volume 36, page 289, it is stated that: "The term rent will not be extended to include all payments which by the terms of the lease, the tenant is bound to make, such as a payment of taxes or of the costs of improvements, nor will it include the obligation to perform collateral covenants." Having in mind the fact that definiteness is necessary in order to fix a lien, we discover at least one reason why the courts do not permit the breach of covenants, to be secured by a lien. Where one is given permission to alter, which permission may or may not be exercised, there appears to be no such appropriate broad construction of the Texas statute which would include it, and there is no word in the lease under consideration which would justify the conclusion that a lien was intended.

Those who sell goods to a merchant, who is a renter, are entitled to rely upon the wording of the lease that he has executed and the local law, in determining whether what they sell will be subject to a landlord's lien for rent. The statute giving the lien enters into and forms a part of the contract or lease. Wilkinson v. Ketler, 59 Ala. 306, 308.

A liberal construction of a remedial statute must be bounded by reasonable intendment and should not fly in the face of the contract of the parties.

The variety of statutory wording in the fixing of the lien makes it impracticable to fix any definite national rule, but it is not thought that a lease worded as here can support either a contract lien or the statutory lien in Texas. The most that can be said, was said, in McCann v. Evans, 3 Cir.,

540

185 F. 93, under the very liberal Pennsylvania statute, which permits sums capable of being made definite and chargeable, on demised premises, such as taxes, gas and water rates, or, for improvements and betterments, to be made a part of the rent by the lease, and when so made may be destrained for by the landlord, or covered by the landlord's lien. That holding of the Circuit Court of Appeals for the Third Circuit seems to be in line with the Copping case.

Benefiting by the light of these decisions, we find nothing in the statute to support the lien for the change in the wall and nothing in the contract of the parties to make such change, if and when made, a part of the rent. That being true, an order may be drawn approving the finding of the referee that the claim should be allowed as unsecured.