**In re BONWIT, LENNON & CO., Inc.**

No. 9262.

District Court, D. Maryland.

Dec. 17, 1940.

Raymond S. Williams and Kenneth Ekin (Hershey, Donaldson, Williams & Stanley), all of Baltimore, Md., for trustees under will of J. Henry Miller.

Edward L. Ward, of Baltimore, Md., for Trustee in Bankruptcy.

**98**

CHESNUT, District Judge.

The extent of a landlord's proper claim for future rent under a lease terminated by the bankruptcy of the tenant, is the principal question now before the court in the above entitled case. The question arises on petitions to review the referee's order, filed both by the landlord and the trustee in bankruptcy. Counsel have been heard and the questions considered.

Prior to May 5, 1939, Bonwit, Lennon & Company, Inc., a Maryland corporation, had for some years conducted a ladies wear and apparel shop at 220-222 N. Charles Street, Baltimore City. Becoming financially involved the corporation on May 5, 1939, filed a petition for reorganization under Chapter X of the Chandler Bankruptcy Act of 1938, 11 U.S.C.A. § 501 et seq. In due course of administration in that proceeding it became apparent after a few months that no plan of reorganization would be feasible, and, to save further loss to the inventory, which was somewhat of a seasonal nature, the assets were sold as a going concern, and thereafter, the corporation being hopelessly insolvent, an order of adjudication in bankruptcy was passed.

▮ In the course of the administration of the estate in ordinary bankruptcy, the landlord filed a claim for priority in payment of three months' accrued rent of $7200, in accordance with the Bankruptcy Act, § 64, sub. a (5), 11 U.S.C.A. § 104, sub. a (5), as affected by the Maryland statute, Art. 47, § 15a of the 1935 Supplement to Bagby's Maryland Code. The trustee in bankruptcy opposed this claim before the referee on the ground that only $4,200 was due and entitled to priority. The referee determined that the whole $7,200 was due. During the three months involved prior to the bankruptcy the tenant had paid $3,000; but more than this amount was overdue and unpaid under the lease for a prior period. The question here is whether the landlord properly applied the $3,000 so paid on account to prior accumulated rent or should have applied it to currently accumulating rent during the three months' period. The trustee in bankruptcy contends that the amounts were first applied by the landlord on account of the current monthly rent, which was $2,400 per month, who subsequently undertook to change the application to rent due for prior periods, without the consent of the tenant. The question is one of fact, as to which

the referee in his memorandum of law filed February 26, 1940, said: "As previously stated, the trustee in bankruptcy asserted that $1500 had been applied by the bank to the rent for March 1939, and $1500 has been applied to the rent for April, leaving only $900 due for each of those months and thereby reducing the amount of the landlord's lien to $1800 plus $2500 ($2400) for the month of May, a total of $4200. The ledger account of the bank, however, fails to support this contention. It is unnecessary to consider whether or not the bank had a right to change its original application of the payments received prior to March 27, 1939." After full argument of counsel on this point and an examination of the exhibits, I find that the referee's conclusion in this respect is correct; and therefore the trustee's petition for review of this item is overruled, and the referee affirmed on that point.

The more important question, however, relates to the proper amount to be allowed for the landlord's claim for damages for the termination of the lease by the bankruptcy trustee. Section 63, sub. a (9), of the present Bankruptcy Act, 11 U.S.C.A. § 103, sub. a (9), under the caption of "Debts which may be proved" reads as follows:

"(9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued, without acceleration, up to such date".

It will be remembered that until a few years ago such claims for future rent under a lease, affected by bankruptcy, were not proveable and therefore not dischargeable in bankruptcy. Manhattan Properties, Inc., v. Irving Trust Co., Trustee, 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824; Kuehner v. Irving Trust Co., Trustee, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340. The landlord filed a claim for damages in the total

amount of $98,887.91 based on the amount of the whole future rent calculated for the balance of the term, less the estimated fair rental value of the property for that period, both sums discounted at the rate of 3% per month (the rate of discount of itself being acceptable to both parties). This calculation was professedly based on the applicable principle stated in the Kuehner case, supra. The referee made certain deductions (not here important) which reduced the claim to $85,537.91. It will have been noted, however, that the statute provides that the landlord's claim for damages "shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry * * *, whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued, without acceleration, up to such date." It was, therefore, necessary for the referee to determine the amount allowable on the basis of one year's future rent. He allowed a sum equal to the amount of rental stipulated in the lease for the succeeding year which aggregated $29,200, and added to this the sum of $1,400 on account of state and city taxes, being a portion of the latter which the tenant had agreed to pay, and discounted both sums at the rate of 3%, thus arriving at the figure to be allowed as the landlord's claim for damages, as a common creditor, in the amount of $30,156.

■ The landlord has petitioned to review the referee's order in this respect on the ground that the allowance should have been for *three* years' rental ($93,400) instead of *one*. The basis of this contention is that under section 202 of Chapter X, 11 U.S.C.A. § 602, of the Bankruptcy Act, under which the whole proceeding was originated, the landlord's claim for future rent "shall be limited to an amount not to exceed the rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid accrued rent, without acceleration, up to such date of surrender or reentry". It will be observed that, in this respect, the language of section 602 is practically the same as that of section 103 of 11 U.S.C.A. with the exception of the maximum period, which, in one case is three years, and in the other one. Counsel for the landlord contend that as this bankruptcy proceeding originated under Chapter X for the reorganization of the corporation, its claim for future rent should be determined by section 602 and not section 103. In my opinion the referee correctly determined that the claim must be limited to one year's rent. As the proceeding for reorganization proved to be futile and the adjudication of bankruptcy followed in due course, the applicable law therefore became the ordinary bankruptcy law which thus controls the matter. The distinction made in the two statutes with respect to the proper amount of allowance of the landlord's claim finds reasonable support in the obvious difference between reorganization under Chapter X and liquidation in ordinary bankruptcy. See Moore's Bankruptcy Manual, p. 531; In re Collins Hosiery Mills, D.C., 18 F.Supp. 89, 91; Milwaukee Postal Building Corporation v. McCann, 8 Cir., 95 F.2d 948, 950.

■ The trustee in bankruptcy challenges the referee's computation of the amount of one year's rent allowed to the landlord with respect to two items; one is the failure of the referee to deduct from the amount allowed the sum of $15,000 which was the estimated present fair rental value of the property. This contention proceeds on the assumption that the landlord's damages must be limited to his net loss for only one year; but this does not seem to be the proper construction of the statute which in terms allows the landlord to compute his whole loss over the whole unexpired period of the lease, but limits the proveable claim to the amount of one year's rent. Counsel for the trustee cites in support of his contention In re Jas. Butler Grocery Co., D.C., 22 F.Supp. 995, 997, but in my opinion that case does not support the position because there the unexpired period of the lease terminated by bankruptcy was for less than one whole year.

. The other objection made by the trustee to the referee's computation of one year's rent creates a more difficult question. The referee allowed $1400 on account of taxes, and this is objected to by the trustee. The lease dated March 24, 1926, provided for a term of 19 years from February 1, 1926 to January 31, 1945, and required the payment of rental on a sliding scale from

$26,400 for the first four years to $30,000 for each of the last five years, payable partly in a lump sum in advance and thereafter in monthly instalments. With respect to the item of taxes the lease further provided as follows: "And the said Tenant hereby covenants that in addition to the rent hereinbefore specified to be paid by it, it will within sixty days after demand therefor, in each and every year during the term hereby created, pay to the said Landlord such sum or sums of money as shall represent the excess paid by said Landlord during each of such years for State and City taxes over and above the sum or sums paid by said Landlord for State and City taxes for the year A.D. 1926; but subject to the proviso that the refund of taxes to be made by said Tenant in any one year shall not exceed the sum of Fourteen hundred dollars ($1400.00)."

The tenant "further covenanted and agreed" to expend during the tenancy, not less than $15,000 on improvements, and to pay all charges for water, electric light, power, gas, heating and refrigeration used upon the premises, and also to obtain and deliver to the landlord policies of general public liability insurance in stipulated amounts. These further expenses to be paid by the tenant (other than the $1400 for taxes) were not included in the referee's computation and are not here in controversy. It is not disputed that if the lease had remained in effect for one year after it was in fact terminated, the tenant would have been obliged to pay the maximum sum of $1400 on account of taxes. With respect to the landlord's right to distrain, it was provided in the lease: "And it is Further Covenanted and Agreed by and between the parties hereto that if any one or more of the said instalments of rent shall be thirty days in arrear, the said Landlord shall have the right to distrain for the same and to re-enter and re-take possession of said premises, said right of re-entry however, not to take away or in any degree impair the right to the full rent." The lease further provided with respect to the landlord's right of reentry as follows: "And it is Further Covenanted and Agreed that if said Tenant shall violate any of the covenants herein made on the part of said Tenant, the Landlord shall notify the Tenant in writing of such defaults and if defaults have not been complied with within fifteen days, the landlord shall have the right, if he shall so elect, to re-enter upon and re-take posses-

sion of said premises without any notice whatsoever and this Lease shall in such event, thereupon become and be wholly null and void."

The precise question here presented is the proper meaning of the word "rent" as it is used in 11 U.S.C.A. § 103, sub. a(9). Must it be limited to payments required by the lease to be made by the tenant as rent *eo nomine,* as a part of the whole consideration to the landlord for the letting of the premises, or does it mean the whole consideration to be paid by the tenant including not only rent described as such, but other payments such as the whole or part of the taxes on the property? There has been no judicial decision on the point up to the present time, and counsel have not been able to refer me to any legislative history of the present statute which throws any light upon this particular point. After consideration, I think it must have been the intention of Congress to give the latter, that is the broad, construction to the word "rent" as here used in this context. It seems clear enough from the language of the statute that the landlord is entitled to include the tenant's tax payment obligations in computing his whole damages from the termination of the lease. The statute describes the claim of the landlord as "damages for injury * * * or for damages or indemnity under a covenant contained in such lease". In the present lease the required tax payment is made a covenant and, therefore, seems to be precisely within the phraseology of the statute. It does not seem probable that it was the intention of Congress to allow the tax payment to be included in determining the landlord's whole damage, but to exclude it in the computation of the rent reserved for the first succeeding year.

To limit the word "rent" as used in the statute to those payments only which are described as rent *eo nomine,* would practically result in great inequality of recoveries by landlords under leases having only technically different phraseology but no substantial economic difference. Bankruptcy legislation is under the federal constitution required to be uniform throughout the United States. It is true that complete uniformity has not been required under the several bankruptcy Acts in that, in the administration of the assets of a bankrupt, distribution may be affected as to certain classes of claims by the differ-

ent treatment thereof in the laws of the several states. But the narrow construction of "rent" in the present statute would create further lack of uniformity in the rights of landlords under leases substantially similar in economic effect but varying slightly in mere phraseology. For illustration, if the consideration for a lease for three years is a payment of $100 per year as rent, the tenant to pay in addition the taxes amounting to $3,000 a year, and the lease is terminated by bankruptcy at the end of the first year, the landlord's actual damage would be $6,200 (provided the property could not be re-rented for any consideration) and, if the narrow construction of the word "rent" is adopted, the landlord's claim would be allowed for only $100; but if the broader construction of "rent" is adopted the allowable claim would be $3,100. This is not a fanciful example. It is well known that at the present time much valuable real estate, especially in large cities, is in a transition period with respect to utility and rental value. Where this condition prevails it may very well be that the property owner will be glad to rent his property for a few years at a nominal sum if the tenant will assume the obligation to pay the substantial taxes. It has also become customary in recent years, especially in leases of business property, to require the tenant, in addition to a fixed monthly rent, to pay the whole or some part of the taxes which vary in amount from year to year. The present lease is an instance thereof. Probably the most careful counsel for landlords in drafting such leases use phraseology which describe the taxes as additional rent *eo nomine,* but such careful provision is not universal. The most important reason for describing such tax payments as rent *eo nomine,* is to give the landlord the benefit of a lien or right to distrain for non-payment.

It is also to be borne in mind that we are not here dealing with a priority claim for accrued rent under the Bankruptcy Act as affected by state legislation or decisions, but for damages resulting from loss of future rent by reason of an anticipatory breach. The question whether a landlord can recover taxes payable under a lease but not described as rent *eo nomine,* as a priority claim, has been much discussed in the cases. The decision in each case depends upon the local law. See In re Rosenstock, D.C.Md., 1 F.Supp. 830,

reversed on the construction of the particular lease, Irving Trust Co. v. Burke, 4 Cir., 65 F.2d 730, 88 A.L.R. 877, and the numerous cases in Maryland and elsewhere therein referred to. But the answer to the question of what is included in "rent" as used in the statute is not dependent upon local law, but is to be determined by ascertaining the intention of Congress, and the true construction must have uniform application wherever the question arises.

I think there is no legal difficulty in giving the broader meaning to the word "rent" as here used. First thoughts upon the subject are apt to be influenced by the general professional understanding of "rent" as something for which a lien is given or can be secured by distraint under the local law. But while this is the common professional thought with regard to rent, the meaning of the word at common law was not limited to that kind of rent for which the procedure of distraint was permissible. See 2 Bouv. Law Dict. Rawle's Third Revision, p. 2880, and 36 C.J., Landlord and Tenant, p. 285, § 1037, where "rent" is defined "as the return, whether of money, service or specific property, which the tenant makes to the landlord as compensation for the use of the demised premises". And on page 288, § 1044, of 36 C.J., it is said: "By the early English common law, rents were divided into three classes: Rent service, rent charge; and rent seck. The importance of this distinction rested largely in the availability of the remedy by distress for rent in arrears and was practically abrogated in England by the statute of Geo. II." See also Taylor on Landlord and Tenant, §§ 165–169. I assume, although the point is perhaps debatable, that the present lease does not give the right of distraint for taxes (cf. Irving Trust Co. v. Burke, supra), but as previously stated, this is not the controlling point.

While there is no prior judicial decision on the precise point of statutory construction here discussed, there are a number of decided cases which lend support to the view which I take. Thus in Feldmeyer v. Werntz, 119 Md. 285, 289, 86 A. 986, it was said that a covenant on the part of the lessee to pay taxes, not specifically named as rent, was equivalent to an agreement to pay rent; and in Maryland Theatrical Corp. v. Manayunk Trust Co. 157 Md. 602, 608, 146 A. 805, it was held that taxes payable by the tenant as rent should be

included in the total rent for purposes of capitalization of the rent for redemption under the Maryland statute. And in Britton v. Western Iowa Co., 8 Cir., 9 F.2d 488, 491, 45 A.L.R. 711, where a lease provided for the payment by the tenant of taxes "as an additional consideration for the leasing of said premises", the court said: "We think this language reveals an intention of the parties to treat such taxes as a part of the rental for the property." Cf. Lamoine Mott Estate v. Neiman, 8 Cir., 77 F.2d 744, 99 A.L.R. 1097. In Re Copping's Estate, D.C.Tex., 29 F.2d 998, 999, district (now circuit) Judge Hutcheson dealt with the question whether a landlord's claim for taxes, though not described as rent, was entitled to priority in payment in bankruptcy. In holding for the landlord's claim in this respect he said: "To hold in a case of this kind that the landlord would be protected in the payment to him as rent of a sum of money stipulated as such eo nomine, but not to the same sum of money stipulated to be paid by the tenant as consideration for the same premises, because, forsooth, part of it was called rent and the balance was given the name of the obligation which the landlord owed and for the indemnity of himself from the payment of which he had obligated the tenant, would be a sticking in the bark." See also Perrin & Smith Printing Co. v. Cook Hotel & Excursion Co., 118 Mo.App. 44, 93 S.W. 337; Neagle v. Kelly, 146 Ill. 460, 34 N.E. 947; Roberts v. Sims, 64 Miss. 597, 2 So. 72; Quinby Co. v. Sheffield, 84 Conn. 177, 79 A. 179; Woolsey v. Abbett, 65 N.J.L. 253, 48 A. 949. In some cases taxes payable by the tenant have been held not to constitute rent because payable to the government and not to the landlord, or because the amount was lacking in the certainty required for rent. Taylor, Landlord and Tenant, § 169h and § 143; 36 C.J., Landlord and Tenant, §§ 1051 and 1273. But no such condition exists here.

I therefore conclude that the petitions, both of the landlord and of the trustee in bankruptcy, to review the orders of the referee dated February 26, 1940, in which he allowed the prior claim of the landlord for $7,200, and allowed the landlord's claim for damages as a common creditor in the amount of $30,156, should be overruled; and it is now therefore ORDERED by the District Court of the United States for the District of Maryland this 17th day of December, 1940, that the said orders of the referee be and they are hereby *affirmed*.